# DANIELS *v.* WAGNER.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 239. Argued April 21, 1915.—Decided June 1, 1915.

Under the Forest Act of June 4, 1897, c. 2, 30 Stat. 36, one whose land was included in a forest reserve had the right to apply to the Land Office, and, on surrendering his land, to obtain the right to enter an equal amount of public lands on offering to do all that the law and lawful regulations of the Land Department required.

The fact that an officer of the Land Department commits a wrong by denying to an individual a right expressly conferred by law cannot become the generating source of a discretionary power to make such wrongful act legal. *Cosmos Co.* v. *Gray Eagle Co.,* 190 U. S. 301, distinguished.

One who has done everything essential, exacted either by law or the lawful regulations of the Land Department, to obtain a right from the Land Office conferred upon him by Congress, cannot be deprived of that right either by the exercise of discretion or by a wrong committed by the Land Officers.

Error of law having been committed by the Land Department in assuming that it had a discretionary power to reject a lieu entry made under the Forest Act of June 4, 1897, by one who had offered to comply with the statute and lawful regulations of the Department, its action is not sustainable, upon general equitable considerations, such as were made the basis for refusing to issue certificates in this case.

Because a patent of the United States is involved, does not necessarily require the United States to be a party to an action to determine to whom it should have been issued.

205 Fed. Rep. 235, reversed.

THE facts, which involve the construction of certain provisions of the laws of the United States relating to the public lands, are stated in the opinion.

*Mr. Harrison G. Platt,* with whom *Mr. Robert Treat Platt* and *Mr. Hugh Montgomery* were on the brief, for appellant.

*Mr. J. H. Carnahan,* with whom *Mr. F. H. Mills* was on the brief, for appellee:

No vested right is acquired by the mere offer to file a forest lieu selection which is rejected. *Cosmos Co.* v. *Gray Eagle Co.,* 190 U. S. 301; *Pacific Land Co.* v. *Elwood Co.,* 190 U. S. 314; *Roughton* v. *Knight,* 219 U. S. 536; *United States* v. *McClure,* 174 Fed. Rep. 510; *Clearwater Timber Co.* v. *Shoshone Co.,* 155 Fed. Rep. 612; *Osborn* v. *Forsyth,* 216 U. S. 570; *Pacific Stock Co.* v. *Isaacs,* 96 Pac. Rep. (Ore.) 464; *Robinson* v. *Lundrigan,* 178 Fed. Rep. 230; *S. C.,* 227 U. S. 173; *Miller* v. *Thomas,* 36 L. D. 492; *Ehlainen* v. *Santa Fe Pac. R. R.,* 42 L. D. 578; *Re Walker,* 36 L. D. 495; *Sherar* v. *Frazer,* 40 L. D. 549; *La Fayette Lewis,* 33 L. D. 43; *William E. Moses,* 33 L. D. 333; *Smith* v. *State,* 40 L. D. 554; Instructions, 24 L. D. 589, 592; Instructions, 30 L. D. 28; *Kern Oil Co.* v. *Clarke,* 30 L. D. 550, 569; *S. C.,* 31 L. D. 288; *Gray Eagle Co.* v. *Clarke,* 30 L. D. 570; *Re Cobb,* 31 L. D. 220; *Santa Fe Pac. R. R.* v. *State,* 34 L. D. 12; *Re Walker,* 36 L. D. 495; *Sherar* v. *Veazie,* 40 L. D. 549.

The administration of the Forest Reserve Lieu Land Act of June 4, 1897, as amended by subsequent acts of Congress, is vested in the Land Department of the United States. Cases *supra* and *Wisconsin Cent. R. R. Co.* v. *Price Co.,* 133 U. S. 460; Regulations of Int. Dep't under act June 4, 1897, 24 L. D. 589; *Nasqually* v. *Gibbon,* 158 U. S. 155; *Knight* v. *Land Association,* 142 U. S. 161, 177; *In re Clarke,* 32 L. D. 233, 235; *Miller* v. *Thompson,* 36 L. D. 492.

The decisions of the Land Department upon questions of fact are conclusive. *De Cambra* v. *Rogers,* 189 U. S. 119; *Gertgens* v. *O'Connor,* 191 U. S. 237; *Johnson* v. *Drew,* 171 U. S. 93; *Love* v. *Flahive,* 205 U. S. 105; *Johnson* v. *Towsley,* 13 Wall. 72; *Marquez* v. *Frisbie,* 101 U. S. 473; *Quimby* v. *Conlan,* 104 U. S. 420; *Burfenning* v. *Chicago,* 163 U. S. 321; *Whitcomb* v. *White,* 214 U. S. 15.

Likewise its decisions upon mixed questions of law and fact. *Quimby* v. *Conlan,* 104 U. S. 420; *Whitcomb* v. *White,* 214 U. S. 15; *Ross* v. *Day,* 232 U. S. 114; *Moore* v. *Robbins,* 96 U. S. 530; *Gonzales* v. *French,* 164 U. S. 338.

The acts of the Executive Departments of the Government, when acquiesced in, and especially their interpretation of statutes which they are called upon almost daily to construe, if acquiesced in for a long time, are almost conclusive upon the courts. *Roughton* v. *Knight,* 219 U. S. 536; *Osborn* v. *Forsyth,* 216 U. S. 570; *Orchard* v. *Alexander,* 157 U. S. 373; *Knight* v. *Land Association,* 142 U. S. 161; *Parsons* v. *Venzke,* 164 U. S. 89; *Williams* v. *United States,* 138 U. S. 514, 524; *Kern Oil Co.* v. *Clarke,* 31 L. D. 288, 300; *Pacific Stock Co.* v. *Isaacs,* 96 Pac. Rep. (Ore.) 464.

The Secretary of the Interior is vested with large discretionary powers in the administration of the public land system. *Williams* v. *United States,* 138 U. S. 514, 524; *Knight* v. *Land Ass'n,* 142 U. S. 161, 177; *Fowler* v. *Dennis,* 41 L. D. 173.

The act of June 4, 1897, contemplates a common-law exchange of equal estates, which requires the assent of both parties thereto before the exchange is consummated. See Co. Litt., 50a *et seq.;* Butler & Hargrave's Notes; Shep. Touch. 294; 3 Words & Phrases, 2547; *United States* v. *McClure,* 174 Fed. Rep. 510; *Clearwater Timber Co.* v. *Shoshone Co.,* 155 Fed. Rep. 612; *Lessieur* v. *Price,* 12 How. 59, 74; *Roughton* v. *Knight,* 156 California, 123; *S. C.,* 219 U. S. 536; *Re Lewis,* 33 L. D. 43; *Re Moses,* 33 L. D. 333; *Re Hyde,* 28 L. D. 286, 290; *Opinions Asst.*

*Atty.-Gen. Van Devanter*, 28 L. D. 312, 472; 30 L. D. 105; *Kern Oil Co.* v. *Clarke*, 30 L. D. 550; *S. C.*, 31 L. D. 288, 294; *Gray Eagle Co.* v. *Clarke*, 30 L. D. 570; Instructions, 31 L. D. 225; *Re C. W. Clarke*, 32 L. D. 233, 235; *Miller* v. *Thompson*, 36 L. D. 492; *Smith* v. *Idaho*, 40 L. D. 554.

In case of rejection of lieu land applications the base lands are not lost. Cases *supra* and *Re Austin*, 33 L. D. 589; *Re Krebs*, 37 L. D. 143.

The selector of land under the exchange provisions of the act of June 4, 1897, is the owner of the base land and must pay taxes thereon until the selection is approved by the Commissioner of the General Land Office and the exchange consummated. *Weyerhauser* v. *Hoyt*, 219 U. S. 380, distinguished. Under the act of June 4, 1897, if the selection fails, the selector still retains the land he attempted to relinquish to the United States, and loses nothing. Cases *supra* and *Sjorli* v. *Dreschel*, 199 U. S. 564; *Grant* v. *Railway Co.*, 54 Iowa, 673; *Musser* v. *McRae*, 38 Minnesota, 409; *Page* v. *Price Co.*, 25 Washington, 6.

If dissatisfied, plaintiff should have brought mandamus against the Secretary of the Interior when the selections were finally rejected. *Osborn* v. *Forsyth*, 216 U. S. 570.

The decisions of the Interior Department construing the laws specially intrusted to it for execution, and the rules and regulations promulgated by it in the discharge of its duties, should not be disturbed or reversed except for the most cogent reasons. Rev. Stat., §§ 441, 453, 2478; *Knight* v. *Land Assn.*, 142 U. S. 161, 167; *Orchard* v. *Alexander*, 157 U. S. 372, 375; *Bishop of Nasqually* v. *Gibbon*, 158 U. S. 155, 166; *Parsons* v. *Venzke*, 164 U. S. 89, 91; *Gray Eagle Co.* v. *Clarke*, 31 L. D. 303, 306; *McMichael* v. *Murphy*, 197 U. S. 304; *Williamson* v. *United States*, 207 U. S. 425, 462; *Logan* v. *Davis*, 233 U. S. 613; *Small* v. *Rakestraw*, 196 U. S. 401.

Lands suspended from entry, or reserved by competent authority, and lands occupied or covered by an entry,

selection or filing, and mineral lands, are not subject to selection under the exchange provisions of the act of June 4, 1897. *Leaming* v. *McKenna,* 31 L. D. 318; *Kern Oil Co.* v. *Clarke,* 31 L. D. 288; *Wilcox* v. *Jackson,* 13 Pet. 498, 513; *Walcott* v. *Des Moines Co.,* 5 Wall. 681, 688; *Grisar* v. *McDowell,* 6 Wall. 363, 381; *Re Cal. Land Co.,* 33 L. D. 595; *Sante Fe Pac. R. R.* v. *California,* 34 L. D. 12; *Re Santa Fe Pac. R. R.,* 34 L. D. 119.

The decision of the Secretary of the Interior in the cases at bar followed a long line of decisions rendered by his predecessors. *Kern Oil Co.* v. *Clarke,* 30 L. D. 550; Instructions, 24 L. D. 589, 592; *Gray Eagle Oil Co.* v. *Clarke,* 30 L. D. 570; *Re Pavey,* 31 L. D. 186; *Re Cobb,* 31 L. D. 220; *Porter* v. *Landrum,* 31 L. D. 352.

The regulations promulgated by the Secretary of the Interior in pursuance of statute, have all the force and effect of law. *Cosmos Co.* v. *Gray Eagle Co.,* 190 U. S. 301; *Knight* v. *Land Assn.,* 142 U. S. 161, 177; and see 2 L. D. 709; 5 L. D. 169; 6 L. D. 111; 9 L. D. 86, 189, 284, 353.

The law deals tenderly with the settler upon public lands. *Ard* v. *Brandon,* 156 U. S. 537, 543; *Shepley* v. *Cowan,* 91 U. S. 330, 338.

The courts of the United States take judicial notice of the regulations of the Land Department. *Caha* v. *United States,* 152 U. S. 211; *Leonard* v. *Lennox,* 181 Fed. Rep. 764; *Jones* v. *United States,* 137 U. S. 202, 216; *Jenkins* v. *Collord,* 145 U. S. 546, 560.

The final decision of the Interior Department of February 17, 1910, shows that the selections were never accepted by the Land Department, notwithstanding allegations in other parts of the amended bills of complaint to the contrary.

That plaintiff was awarded a decision by the Interior Department, prior to the final decision of February 17, 1910, in favor of defendants, gives him no standing, since the final decision alone determines the rights of the parties.

*Potter* v. *Hall,* 189 U. S. 292; *Greenameyer* v. *Coate,* 212 U. S. 434.

Mr. Chief Justice White delivered the opinion of the court.

Daniels, the appellant here, was plaintiff in the trial court and appellant in the court below. In stating this case in its opinion the court below mentioned that there were fifteen other cases under submission in which Daniels also was the plaintiff in the trial court and the appellant before it and that all the cases involved substantially the same legal questions. The court, evidently considering that its conclusions in this disposed of the other cases, directed a judgment of affirmance not only in this but in the other fifteen cases. It would seem, since only fourteen of the cases besides this one are here, that in one of the cases no appeal was taken, but otherwise the situation which existed below obtains here, since this and fourteen other cases are before us for decision. For the appellant this case and the fourteen others were argued in one brief, but for the appellees the cases in the briefs are divided into groups presumably in consequence of what was assumed to be some material difference of fact between them. In passing upon the cases the court below substantially rested its conclusion upon what it decided was the power of the officers of the Land Department over the land entries which are the subject of the controversy, although in concluding its opinion the court intimated rather than decided that even if its views on the question of power were mistaken, there was a state of fact in this (and presumably in the other cases) which required a decision against Daniels, the appellant. 205 Fed. Rep. 235.

In the argument before us for the appellant it is not disputed that if the court below was right in its ruling as to the power of the Land Department, its conclusion in

this and all the other fifteen cases was correct and its decrees must be affirmed, since under the hypothesis stated there is no contention that there is any fact in this or any of the other cases which would justify a different conclusion. On the other hand, in the arguments for the appellees, although it is not disputed that if the court below erred in the proposition which it maintained concerning the power of the Land Department its decrees were wrong, it is nevertheless insisted that putting the proposition of power out of view, in some if not in all the cases particular facts were established which when properly considered would require an affirmance of the decrees.

Under these conditions to avoid repetition in the statement of the other cases, we proceed first in this case to dispose of the proposition as to the power of the officers of the Land Department in order, if it be found that such proposition was well founded, to decide this and all the other cases without going any further. In following this method we shall state the case on broad lines so as to present in bold relief the legal question for decision, paying no heed to facts not in any way involved in that question. If, after doing so, the power upheld by the court below be found not to exist we shall then examine the facts to determine how far they may control or influence the decision of the case.

In June, 1902, the State of Oregon prepared lists selecting lands in place of certain designated school lands for which it claimed to be entitled to be indemnified and these lists were filed in the local land office and were transmitted for approval to the Commissioner of the General Land Office. The State before such approval sold to Daniels the land covered by the lists including that with which this controversy is concerned. The Land Department subsequently refused to approve the state lists because of error concerning the school lands for which the right of indemnity was asserted. Daniels, the purchaser from the

State, was therefore without right in and to the land. Through the Governor of the State an arrangement was made with the Land Department by which the State might point out and substitute other school sections, the right to which had been lost, for those previously stated, and if it could not do so, on notice from the Department that its lists would be cancelled the State might relinquish its claim, if any, arising from the filing of the lists in favor of its vendees who on presentation of the relinquishment might enter the land which they had already bought from the State. The Department directed attention to the fact that in the meanwhile the right of the vendees to make the proposed entry would be indubitably preserved as the filing of the previous lists by the State had segregated the land and until . the relinquishment was presented that segregation would continue, and further that if the relinquishment and the application to enter the lands were filed together, no danger of loss of right would exist. Daniels, to avail of this advantage, procured the Aztec Land and Cattle Company and one Perrin who owned land which had been included in the San Francisco Mountains Forest Reserve, in his interest and for his account to surrender said land to the United States under the provisions of the act of Congress of June 4, 1897 (c. 2, 30 Stat. 36), and to apply for the benefit of Daniels to enter as lieu land the land which he had bought from the State of Oregon. To accomplish this purpose it was understood that the relinquishments which the State had made of its rights, if any, to such land resulting from its filed lists should be delivered to the Land Office in connection with the application to enter the lieu lands, thus following the method suggested previously by the Land Department. Carrying out this purpose after compliance in every respect with the statute and with the regulations of the Land Department the application for the lieu lands was filed and the certificate of relinquish-

ment from the State was simultaneously handed to the proper Land Office.

When the applications were made it is not disputed that it was the duty of the local land officers on receipt of the application to file and transmit it to the Commissioner of the General Land Office for his approval, but for some reason best known to themselves they rejected the application and allowed subsequent entries in favor of other persons to be made under the homestead, timber and stone and other laws. From this there resulted a controversy which led to repeated directions by the Land Department to the local Land Office to allow the lieu entry, but which for one reason or another were not carried out, until finally in February, 1910, the whole subject came before the Secretary of the Interior on appeal from a ruling of the Commissioner of the General Land Office that the lieu entry was valid and again directing that it be allowed and consummated. In great detail reviewing the facts concerning the Daniels purchase from the State of Oregon and his obtaining the relinquishment conformably to the instructions of the Department, after holding that his perfect good faith was established and after finding as a matter of fact that the application for the entry of the lieu lands and the relinquishment from the State had been filed simultaneously in the local Land Office although the relinquishment had not been marked by the local officers as filed until afterwards, the Secretary came to review the controversy which had followed and to state his general conclusions as to the entry of the lieu lands as follows:

"It is believed that these applications might have been allowed, not as a matter of right, but in the discretion of the Secretary of the Interior; and if the instructions of the Secretary had been carried out, it would have been done before the case became complicated by the counterequitable considerations arising upon the unfortunate allowance of the Homestead and Timber and Stone entries

for most of these lands.· It is thought however, that in instances where the Land Department has permitted these entries and filings to go of record, where they have become closed transactions, the Department would not be justified in cancelling such entries and filing, for the purpose of protecting the equities of Daniels in these lands. It matters not if Daniels' application was in all respects regular and might have been allowed when presented; yet it was within the competency of the Land Department to dispose of the said lands to other persons; and having .done so, Daniels will not now be heard to question the correct-ness of that disposition. See *Hoyt* v. *Weyerhauser et al.* (161 Fed. Rep. 324)."

·· Giving effect to these opinions the Secretary of the Interior decided that the entries subsequent in date to the Daniels or lieu land entries should be maintained except as to certain of said subsequent claims which were held to be subordinate to the Daniels or lieu land claims for reasons which we need not notice. When this action of the Secretary was carried into effect by the Land Department this suit was brought charging that by error of law of the Department of the Interior Daniels had been deprived of his right to enter the land and seeking to charge the defendants to whom the right to enter the land had been awarded or those holding under them with a trust in favor of Daniels. The averments of the bill were full and embraced the facts above recited and the opinion of the Secretary rendered in 1910 was made a part of the bill. The bill was demurred to as stating no case for relief. It was amended and again demurred to for the same reason. The trial court sustained the demurrer and in substance held that the Land Department had the discretionary power to award the lands, without reference to the priority of the applications, to the persons selected as a result of taking into account the general equitable considerations stated in the opinion of the Secretary of the Interior which

we have already quoted. On appeal the decree of the trial court was affirmed. It was held that the Land Department as to the character of the entries in question possessed the discretionary power which was relied upon by the Secretary of the Interior as the basis for his action although it was held or intimated in considering a decision of this court that the discretionary power asserted could not be applied to indemnity selections made by a railroad company under a railroad grant. In concluding the court said:

"But there is additional ground for sustaining it in the fact that, at the time when the appellant's selection was initiated on February 8, 1904, the lands involved herein appeared upon the records of the local Land Office as selected by the State of Oregon by certain school indemnity lists, and that those lists were not relinquished by the State until February 10, 1904. This sufficiently appears from the decision of the Secretary of the Interior, which is made an exhibit to the bill and is controlling in so far as it varies from the allegations of the bill. *Greenameyer* v. *Coate,* 212 U. S. 434, 443."

This brings us to determine whether the Land Department had a right to reject a prior lieu land entry or entries and award the land to subsequent and subordinate applicants under the assumption that it possessed a discretionary right to do so, an authority the possession of which was sustained by both the courts below.

In primarily testing the proposition from the point of view of principle it is well at once to exactly fix its true import. In doing so it is to be conceded, *a,* that the act of Congress gave the right to one whose land had come to be included by operation of law in a forest or other reservation to apply to the Land Office and obtain the right to enter an equal amount of public land upon the surrender to the United States of the land situated in the reservation and upon the doing and offering to do everything required

by the law or the lawful regulations of the Land Department to be done or offered to be done for that purpose; *b*, that in the particular case the application to enter the lieu land came within the grant of the statute and all that was required by law or lawful regulation was done by the applicant in order to obtain entry, and *c*, that it was the plain duty of the proper authorities of the Department on the filing of the entry in due course under the law to grant it. When these conclusions are accepted it results that the claim of discretionary power is substantially this: That in a case where under an Act of Congress a right is conferred to make an application to enter public land and a duty imposed upon the Department to permit the entry, the Department is authorized in its discretion to refuse to allow that to be done which is commanded to be done and thus deprive the individual of the right which the law gives him. And it becomes moreover certain that the necessary result of this assertion is the following: That although Congress may have the power to provide for the disposition of the public domain and fix the terms and conditions upon which the people may enjoy the right to purchase, it has not done so, since every command which it has expressed on this subject may be disregarded and every right which it has conferred on the citizen may be taken away by an unlimited and undefined discretion which is vested by law in the administrative officers appointed for the purpose of giving effect to the law. When the true character of the proposition is thus fixed it becomes unnecessary to go further to demonstrate its want of foundation. And the inherent vice which thus clearly appears from the mere statement of the proposition when reduced to the ultimate conceptions which it involves is not relieved by the suggestion that the action taken in this case by the Department rested not upon the assumption that there was a general discretion, but upon the assumption that such discretion arose because of the pri-

mary mistake made by the local land officers concerning the lieu entry and the allowance of the filing of claims which. were subsequent in date. We say this because thus seemingly to limit the discretionary power exerted would in our opinion aggravate its manifest unsoundness for the power as thus qualified would come to this: That the commission of a wrong by the officers of the Department in disobeying the Act of Congress and in denying to an individual a right expressly conferred upon him by law would become the generating source of a discretionary power to make the disobedience of law lawful and the taking away of the right of an individual legal. But this in another form of statement brings the proposition back to its real and essential basis.

Let us consider the subject from the point of view of the authorities relied on as sustaining the possession of the discretionary power by the Land Department, first, from the point of view of the opinion expressed by the Secretary of the Interior and second, from that of the court below in affirming the action of that officer. As to the first, it is to be observed that the only authority referred to was the case of *Hoyt* v. *Weyerhaeuser*, decided April 17, 1908, in the Circuit Court of Appeals for the Eighth Circuit, 161 Fed. Rep. 324, and that therefore the ruling was not the result of any prior administrative rule or practice of the Department asserting the existence of the administrative authority which the proposition involves. We do not stop to point out that in our opinion the ruling in *Hoyt* v. *Weyerhaeuser* did not sustain the right to exert the discretionary authority which it exercised, since that case after the action of the Land Department was reviewed in this court and reversed upon reasoning which negatives the assumption that the Department possessed the discretionary authority which it assumed it had. *Weyerhaeuser* v. *Hoyt*, 219 U. S. 380.

As to the second, while the court below likewise re-

ferred to no practice or ruling of the Land Department
asserting the possession by the Department of the lati-
tude of discretion which it exercised, that power was
sustained and the lawfulness of its exertion in the present
case established by the ruling in *Cosmos Exploration
Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 301. While thus
understanding the *Cosmos Case* the court recognized
that the decision in *Weyerhaeuser* v. *Hoyt* was in conflict
with such view if that decision was applicable to the case
before it, which the court concluded was not the case
because it must be restricted to applications for indem-
nity selections made by a railroad company under a
railroad grant and therefore did not relate to lieu land
selections applied for under the Act of 1897. But we
are of opinion that this interpretation of the *Cosmos
Case* cannot be justified. In the first place we can dis-
cover no reason for holding that the *Cosmos Case* either
expressly or by any reasonable implication sustained the
assumption that there existed in the Land Department
in the case of lieu land entries or any other the vast
latitude of discretion involved in the proposition which
was sustained. It is true in the *Cosmos Case* it was de-
cided that courts would not interfere with the right of
the Department to pass upon a question which it had
the power to decide as a prerequisite to allowing a lieu
entry under the Act of 1897, but that ruling has no re-
lation to the question of the right of the Department
after it had passed on the prerequisites required for the
entry under the Act of 1897 and after it had decided
that they had all been complied with, to deny the right
of the applicant to enter and under the theory of a dis-
cretion possessed to permit a later applicant to take the
land, thus depriving the first applicant of the right con-
ferred upon him by the Act of Congress. The difference
between the two is that which must obtain between the
power to decide on the one hand whether the prerequisites

to an entry exist and the right on the other of the Land Department after finding that an applicant has fully complied with the law and is entitled to make the entry which he asks, to permit somebody else to enter the land under the assumption that the law vests a discretion which enables that to be done.

It is true again that in the *Cosmos Case* the court declined to hold that the Department was not at liberty to determine the question as to the mineral character of the lands sought to be entered because that inquiry arose after entry and before its final allowance, a ruling which but in a different form illustrates the broad distinction which we have just pointed out. It is also true that *Weyerhaeuser* v. *Hoyt* concerned a question of the selection of indemnity lands by a railroad company under a railroad grant, but the reasoning in that case, we are of opinion, in the very nature of things is repugnant to the possibility of the possession of the discretionary power in the Department here asserted.

There being then no basis for the assumption of a discretionary power on the part of the Land Department upon which the lieu land entry or entries were finally rejected and the land awarded to other entrymen who were later in time, the bill stated a cause of action sustaining the relief prayed unless the demurrer was rightly maintained for some other reason. And for the purpose of considering that subject we state under one heading the questions involved in its solution.

*From the point of view that it is established that error of law was committed by the Land Department in assuming that it had a discretion to reject the lieu entry, is its action nevertheless sustainable because of the suggestion made by the court below in closing its opinion, or for any other fact or reason pressed in argument?*

These considerations are, of course, as the matter went off on a demurrer, to be determined by the bill

and the opinion of the Secretary of the Interior of 1910, which was annexed to the bill. Although in considering and disposing of the question of law we have given a summary of the proceedings in the Land Department, we refer more fully to the subject. The application to make the lieu entry was presented to the local land office February 8, 1904. After its rejection the applicant for the entry appealed, the date not being given. On this appeal the decision of the local land officers was affirmed by the Commissioner of the General Land Office, the date not being given, and on appeal to the Secretary of the Interior, the local land officers and the Commissioner of the General Land Office were reversed, October 25, 1905, and the local officers were directed to allow the lieu entry. This order was not carried out because the local land officers declined to do so upon the ground that the land covered by the lieu entry was included in a named reservation, and on appeal taken by the lieu entrymen the Commissioner of the General Land Office reversed the action of the local officers, January 23, 1906, and sent the matter back with directions to the local land officers to allow the lieu entry or entries "as of date February 8, 1904, the day on which they were originally presented, if no other objection appeared." What then ensued is thus stated by the Secretary in his opinion:

"Under dates of March 5, and June 11, 1906, the Register submitted full reports to your office [General Land Office] upon the said applications, and stated there were objections to the allowance of the same, in that there were various homestead and timber and stone applications which had been allowed subsequently to the cancellation of the State's list. The Register also referred to the fact that Daniels had caused a contest to be instituted against the State's selection, and questioned his good faith in the matter.

"Separate appeals were taken by the Aztec Land and

Cattle Company and Perrin from this action of the local officers, and the papers in connection with the application of the Aztec Company were transmitted to the Department by your office, letter of May 9, 1906, for further consideration in connection with the report of the local office.

"Upon consideration of the matter thus presented, the Department held in its decision of June 26, 1906, that the facts failed to show that Daniels was entitled to protection as a bona fide purchaser from the State; that the State's selections were filed January 28, 1902, while the lands were sold on January 21st, preceding, at which time they were public lands of the United States, and no one purchasing them could claim to be a bona fide purchaser from the State; that as late as October 5, 1903, Daniels was not asserting that he was a purchaser in good faith from the State, but was acting adversely to it and attempting to contest the lists under which he later asked for recognition as a bona fide purchaser and for equitable relief; that this position then was inconsistent with the position later assumed; and if he had since acquired assignments of the State's certificates of sale, he had done so with full knowledge of the invalidity of the State's claim; that the facts set forth above were fatal to his contention that he was a bona fide purchaser, and as such should be permitted to file the State's relinquishment and obtain precedence over others seeking to appropriate the lands under the general land laws; that to concede to him this privilege under letters October 17 and 13, 1903, mentioned above, would in effect, be to make such persons, as from time to time might constitute the State Land Board, agents to dispose of the public lands of the United States, within the State, to such persons as they might favor by means of sales of public land as state land, the subsequent filing of the State's lists invalid for want of sufficient base, the filing of the State's relinquishment, and the protection of

the purchaser from the State by grace of the Land Department. The Department accordingly held in that decision that the lieu selection should be rejected.

"A motion for review of said decision of June 26th, 1906, having been filed by Daniels, the Department, on May 15 and 18, 1907, rendered decisions holding that while Daniels was not, strictly speaking, a bona fide purchaser from the State, because the certificates of sale issued by the State antedated the filing of the school indemnity selections, and therefore were made at a time when there was no actual claim of the State pending, still Daniels had not purchased the land until the month of April, 1902, nearly three months after the lands had been actually selected by the State, and that having paid a valuable consideration for the lands in an honest belief that a title was being obtained, that was sufficient to constitute a bona fide purchase.

"The decision of June 26th, 1906, was therefore recalled, and it was ordered that the lieu selection should be reinstated."

As additionally stated by the Secretary in his opinion, the Commissioner of the General Land Office transmitted the decision just stated to the local land officers along with the lieu entry or entries for allowance and instructed those officers to notify the parties who had been allowed to make entries subsequent to the filing of the lieu applications to show cause why their entries should not be cancelled.

Thereupon as further stated by the Secretary, "a petition termed a motion for re-review of Departmental Decisions of May 15 and 18, 1907, was filed on behalf of Archie Johnson who claimed a part of the lands under a sale made thereof under the Public Land Laws. This petition or motion charged, in effect, that a conspiracy had been formed for the purpose of acquiring the lands originally by means of the State's selection involved; that the entire

proceeding by which title was sought to be acquired was frau'dulent, and that the parties thereto should not be allowed to perfect title to the lands, to the injury of those who in good faith had entered the same under the Public Land Laws."

And it was the controversy which arose from this petition which took the subject again before the Commissioner of the General Land Office and to the Secretary of the Interior and which led to the final decision of the Department of 1910 with which we are dealing maintaining the right of the lieu entrymen, and in which as we have previously seen in discussing the question of discretion the Department explicitly and finally found (1) that Daniels as a matter of fact was in good faith in his dealings concerning the purchase of the land from the State of Oregon and the receipt from the State of its relinquishment, and (2) that the application for the lieu entry or entries and the relinquishment by the State were presented to the Land Office for filing at one and the same time. Because of its conclusive effect upon that aspect of the question we append in the margin the finding made by the Secretary of the Interior on this subject.[1]

[1] "It is true the record shows that the relinquishments were not marked, filed, in the local office until February 10, 1904, which was two days after the presentation of the scrip applications.

"It is further shown that it was the custom in that office to note the filing of the relinquishments of entries and filings upon public lands on the same day they were received in the office; and a clerk in said office gives it as his opinion that if these relinquishments had been received on February 8, instead of February 10, the filing would have been noted on the day they were received.

"But it is evident from the facts and circumstances surrounding the incident that the scrip applications and the State's relinquishments were, in fact, filed simultaneously.

"The filing was by mail, and the letter of transmittal was written by Daniels' attorney, the said L. T. Barin.

"The letter recites that it contains the relinquishments in question, and it was received at the local land office February 8. Moreover, the

Under these conditions it is apparent that the suggestion made in the opinion of the court below was either inadvertent or, if not, was clearly without foundation, a result as to which there is no room for controversy in view of the express finding by the Department of the simultaneous presentation of the relinquishment and the application for the lieu entry or entries, since it constitutes a finding of fact by the Department which it was within its province and its duty to make and which the courts have no power to review. And from this it follows that any attempt to base a right in favor of persons entering subsequently because of the failure of the local land officers to file, would reduce the case at once to the contention that one who had done everything essential, exacted either by law or the regulations of the Department, to obtain a right from the Land Office conferred upon him by Congress, could be deprived of the same either by the exercise of discretion or by a wrong committed by the land officers.

In addition in the brief for the appellee in this case

action of the local officers at the time in rejecting the proffered scrip applications is put upon the ground that part of the lands were covered by pending homestead and timber and stone applications, whereas if the State had not then relinquished its school indemnity selections, the local officers would surely have assigned this as the reason for rejection of said applications, because this reason would have applied to all of the lands involved, instead of only a small portion of them, as was the case with the reason assigned.

"It is worthy of [notice] too, that there has not been found any correspondence of record which would indicate that if the said Barin had left these relinquishments out of his letter by inadvertence, they were ever afterwards transmitted to the local land office, and no correspondence or record of correspondence showing that if he had been guilty of such inadvertence he was ever advised thereof by the local officers.

"I conclude, therefore, on'this branch of the case that the relinquishments in question and the scrip' applications were filed at the same time, as was suggested they might be in your office report of September 28th, 1903, above quoted."

various mixed contentions of law and fact are stated under six propositions which it is deemed establish that the demurrer was rightly sustained even although the Land Department did not possess the discretion which it assumed it had. Some of them we think too obviously devoid of merit to require anything but statement. For instance, the contention that because a patent of the United States is involved, therefore the United States is a necessary party. As to the others we think whatever be their merit, as to which we intimate no opinion, they plainly concern themselves with the merits of the case and have no tendency to establish the proposition that the demurrer was rightly sustained. Thus, so far as the final action of the Secretary was concerned we think under the averments of the bill and on the face of the Secretary's opinion it is to be assumed that the necessary parties to enable the Secretary to act were before him and that this carries with it, at least for the purposes of the hearing on the merits, the question whether there was an insufficiency of parties in the previous hearings.

Our conclusion therefore is that the judgment sustaining the demurrer was wrong and it must be and is reversed and the case is remanded for further proceedings in accordance with this opinion.

*Reversed.*