# NORTHERN PACIFIC RAILWAY COMPANY v. LANE.

PUBLIC LANDS; LAND GRANT RAILROADS; INDEMNITY LANDS; INJUNCTION; SECRETARY OF THE INTERIOR; PARTIES.

1. No right of selection of indemnity lands accrued to the Northern Pacific Railway Company under sec. 6 of the Act of Congress of July 2, 1864 (13 Stat. at L. 365, chap. 217), until the lands had been surveyed and platted by the United States.

2. Until selection is made, lands within the indemnity limits of a railroad grant are public lands open to settlement and to control by Congress.

3. Mere delay on the part of the officials of the government, however unjust and inexcusable, is a hazard which a contractor with the government assumes, and, unless expressly forbidden by statute or clearly arbitrary, their action is beyond the control of judicial process.

4. A suit by a land grant railroad company will not lie to enjoin the Secretary of the Interior from canceling a list of indemnity lands

attempted to be selected by the company under its grant, where the lands had been withdrawn for a forest reserve during the time the company was prevented from making selection through the neglect of the government to make a survey and after the officials of the government had found that there were not enough lands left within the indemnity limits to meet the losses suffered by the company within the place limits, although if a prompt survey had been made, as contemplated by the Land Grant Act, the company would, at least, have had an opportunity to have made a selection before the Forest Reserve Act was passed; the grant having been accepted by the company with full notice of the possibility of delay in making the survey and the chances of the indemnity lands being taken or reserved for a government purpose. (Citing *Central P. R. Co.* v. *Lane, ante,* 374.)

5. Where title to lands is in the United States at the date of their withdrawal for forestry purposes, a suit by a land grant railroad to subject them to the right of selection as indemnity lands is a suit against the United States, although the defendants named are officials of the government.

No. 3013. Submitted March 9, 1917. Decided April 27, 1917.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to enjoin the Secretary of the Interior from canceling a list of indemnity lands attempted to be selected by the plaintiff, a land grant railroad. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This suit was brought by appellant, Northern Pacific Railway Company, in the supreme court of the District of Columbia, to restrain the Secretary of the Interior from canceling a list of indemnity railroad lands attempted to be selected by plaintiff company under its grant by Act of Congress of July 2, 1864 (13 Stat. at L. 365, chap. 217) and the joint resolution of May 31, 1870 (16 Stat. at L. 378). From a decree dismissing the bill, the case comes here on appeal.

As was usual in the railroad land grant acts, the grant was of

the odd-numbered sections within the primary or place limits, with an additional indemnity grant to meet the losses sustained by reason of prior settlement or otherwise within the place limits. The railroad company constructed the road as required by the act, and applied for survey in order that it might make its indemnity selections. The survey was not made, and, in the meantime, the indemnity lands were rapidly being taken up by settlers.

By Act of Congress of March 3, 1887 (24 Stat. at L. 556, chap. 376, Comp. Stat. 1916, § 4895) the Secretary of the Interior was authorized and directed to immediately "adjust, in accordance with the decisions of the Supreme Court, each of the railroad land grants made by Congress to aid in the construction of railroads and heretofore unadjusted." The act conferred broad power upon the Secretary to adjust and settle conflicting claims growing out of the settlement of these lands by settlers and their sale by the railroad companies. It provided nothing, however, with respect to completing surveys of unsurveyed lands.

Under this act statements in adjustment of plaintiff company's grant in the States and Territories traversed by its constructed line were prepared by the Commissioner of the General Land Office, and, on May 26, 1906, forwarded to the Secretary of the Interior. From this statement it appeared that there was then a large and growing deficiency in the grant, and that it would require more land than remained undisposed of in the indemnity limits to meet the deficiency caused by settlement or otherwise in the primary or place limits.

The railroad company, realizing the situation, and still being unable to procure a survey of the lands by the government, filed blanket selections including all of the odd-numbered sections within the indemnity limits at that date subject to selection, to be shown by the public survey when made. These lists were received by the local land office and certified to the General Land Office, where they still remain on file. A plat of the survey of the township in which the lands here in controversy are situated was filed in the local land office on February 3,

1914, whereupon plaintiff company promptly filed therein a selection list of said land, conceded to be regular and in every respect in compliance with law. When the list reached the General Land Office, the Commissioner, on November 19, 1914, held it for cancelation, for the reason that the lands were embraced within the executive order of March 2, 1907 (34 Stat. at L. 3309) creating the Priest River Forest Reserve. Appeal was taken to the Secretary of the Interior, who sustained the Commissioner; hence this action.

*Mr. Alex. Britton, Mr. Evans Browne, Mr. F. W. Clements,* and *Mr. Charles Donnelly,* for the appellant, in their brief cited:

*Burke* v. *Southern P. R. Co.* 234 U. S. 669; *Central P. R. Co.* v. *Lane; Clarke* v. *Herrington,* 186 U. S. 206; *Daniels* v. *Wagner,* 237 U. S. 547; *Hessey* v. *Northern P. R. Co.; Hewitt* v. *Schultz,* 180 U. S. 139; *Lane* v. *Watts,* 234 U. S. 525; *Re Northern P. R. Co.* 15 Land Dec. 8; *New Orleans R. Co.* v. *United States,* 124 U. S. 124, 129; *Philadelphia Co.* v. *Stimson,* 223 U. S. 605; *St. Paul & P. R. Co.* v. *Northern P. R. Co.* 139 U. S. 1; *Sjoli* v. *Dreschel; Stalker* v. *Oregon Short Line Co.* 225 U. S. 142; *United States* v. *Grand Rapids & I. R. Co.* 154 Fed. 136; *United States* v. *Montana Lumber Mfg. Co.* 196 U. S. 573; *United States* v. *Midwest Oil Co.* 236 U. S. 459; *Wisconsin C. R. Co.* v. *Forsythe,* 159 U. S. 46, 60; *Weyerhaeuser* v. *Hoyt,* 219 U. S. 380, 387; *Wisconsin C. R. Co.* v. *Price County;* Act of July 2, 1864, 13 Stat. at L. 365, Sec. 6; Joint Resolution of May 31, 1870, 16 Stat. at L. 378; Act of March 3, 1875, 18 Stat. at L. 482; Act of March 3, 1887, 24 Stat. at L. 556; Act of March 3, 1891, 26 Stat. at L. 1095; Act of March 2, 1907, 34 Stat. at L. 3309; Act of June 4, 1897, 30 Stat. at L. 36.

*Mr. Charles D. Mahaffie* and *Mr. C. Edward Wright* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The legal propositions are concisely presented in the brief of counsel for plaintiff in three questions, as follows: "(a) What are the rights of a grantee claimant within the indemnity belt of a railroad land grant after full performance of the conditions on which the grant was made, and after statements in adjustment of the grant had been prepared under a law of Congress and submitted under the order of the Secretary of the Interior, showing that more land than those remaining within the indemnity belt will be needed to meet the known losses within the limits of the place grant? (b) Are unsurveyed lands within the indemnity belt after an ascertained deficiency unaffected by the grant merely because the right of formal selection is withheld under departmental decision, and are such lands thereafter 'public lands' within the meaning of that term as employed in sec. 24 of the Act of March 3, 1891 (26 Stat. at L. 1095, chap. 561, Comp. Stat. 1916, § 5121)? And (c) does an inclusion of such lands within the limits of a forest reserve terminate and forfeit the known rights under the grant and bar the formal assertion of such rights fixed and established by the governmental adjustment, evidencing a deficiency in the grant, merely because of the formal assertion of such known rights was denied to the grantee claimant until survey had been made of the lands, which survey could only be made by the grantor, and which survey was withheld until after the forestry withdrawal was ordered?"

Following the decisions in *Weyerhaeuser* v. *Hoyt,* 219 U. S. 380, 55 L. ed. 258, 31 Sup. Ct. Rep. 300, and in *Daniels* v. *Wagner,* 237 U. S. 547, 59 L. ed. 1102, L.R.A.1916A, 1116, 35 Sup. Ct. Rep. 740, Ann. Cas. 1917A, 40, we held in *Central P. R. Co:* v. *Lane, ante,* 374 (No. 3012, present term) that (a) the right of a railroad company, under a valid selection of indemnity lands, attaches at the date of filing its selection list in the local land office; (b) that from that date the land thus selected is no longer a part of the public domain subject to entry under any of the public land laws or to appropriation by the government itself, without due compensation; (c) that when a selection is found

by the Secretary to have been lawfully and regularly made, the acts of approval of the list and issuing a patent therefor are merely ministerial acts which will be enforced by the court; (d) that when withdrawal of the lands thus selected is attempted, even by executive order under a general act of Congress enacted subsequent to such selection, authorizing public lands to be withdrawn for government use, the lands being no longer public lands, an action to restrain the withdrawal and the cancelation of the selection list, and compel approval of the list for patent, is not a suit against the United States, and (e) that when the Secretary finds that a selection of indemnity lands has been lawfully made as of the date of filing the list in the local land office, no question of law or fact remains open upon which the United States is entitled to be heard.

The right of selection of indemnity lands is in the nature of a grant of power conferred by statute and dependent upon a future contingency. "An indemnity grant, like the residuary clause in a will, contemplates the uncertain and looks to the future. What a railroad is to be indemnified for may be fixed as of the moment of the grant, but what it may elect when its right to indemnity is determined depends on the state of the lands selected at the moment of choice. Of course the railroad is limited in choosing by the terms of the indemnity grant, but the so-called grant is rather to be described as a power." *United States* v. *Southern P. R. Co.* 223 U. S. 565, 570, 56 L. ed. 553, 555, 32 Sup. Ct. Rep. 326.

We think no right of selection of indemnity lands accrues to a railroad company until the lands have been surveyed and platted by the United States. In this connection it is important to consider the provisions of the Northern Pacific grant respecting the survey. Section 6 of the Act of 1864 provides "that the President of the United States shall cause the lands to be surveyed for 40 miles in width on both sides of the entire line of said road, after the general route shall be fixed, and as fast as may be required by the construction of said railroad; and the odd sections of land hereby granted shall not be liable to sale, or entry, or pre-emption before or after they are surveyed, except

by said company, as provided in this act; but the provisions of the Act of September, eighteen hundred and forty-one, granting pre-emption rights, and the acts amendatory thereof, and of the act entitled 'An Act to Secure Homesteads to Actual Settlers on the Public Domain,' approved May twenty, eighteen hundred and sixty-two, shall be, and the same are hereby, extended to all other lands on the line of said road, when surveyed, excepting those hereby granted to said company. And the reserved alternate sections shall not be sold by the government at a price less than two dollars and fifty cents per acre, when offered for sale." [13 Stat. at L. 369, chap. 217.]

The provision forbidding sale, entry, or pre-emption of the odd sections, and extending the right of pre-emption and homestead entry to all other lands on the line when surveyed, except those granted to the railroad company, was held in *Hewitt* v. *Schultz,* 180 U. S. 139, 45 L. ed. 463, 21 Sup. Ct. Rep. 309, to apply only to the odd sections of land granted to the railroad company within the primary or place limits. This construction is sound, for the reason that how much, if any, of the indemnity lands may be required cannot be ascertained until after survey, and then it remains uncertain, until selection has been made within the indemnity limits, what lands the railroad company will elect to take. It follows, therefore, that if no power exists to make a selection until after survey, and the right depends upon the exercise of the power, no right can exist in the absence of the power.

It was held in *United States* v. *Morrison,* 240 U. S. 192, 60 L. ed. 599, 36 Sup. Ct. Rep. 326, that under a provision of the Admission Act of Oregon, wherein the State was given the privilege of accepting or rejecting for the use of its public schools sections 16 and 36 in each township of public lands in said State, no title passed to the State, though it had elected to accept the grant, until after survey by the government. The act permitted the State to select lands in lieu of lands lost under the grant by prior settlement or otherwise. But the land in controversy was not lieu land, but a section of the original grant. This ruling is analogous and convincing, since the claim of the State is

much stronger than the claim of the railroad company. There, the sections of the grant were designated by number. Here, there is no way of determining in advance the indemnity lands which may be selected, the only limitation being that they must be from odd-numbered sections within the indemnity limits. We are of opinion, therefore, that there is no right of selection until after a survey of the place and indemnity lands.

This brings us to the more difficult question of the right of the government to withdraw this land for a forest reserve to the prejudice of the railroad company during the time it was prevented from making selection through the neglect of the government to make the survey, and after the officials of the government had specifically found that there were not enough lands left within the indemnity limits to meet the losses suffered by the railroad company within the place limits. If the government officials had made prompt survey, as contemplated by the statute, the railroad company would, at least, have had an opportunity to have made a selection before the Forest Reserve Act was passed. But does that change the legal status of the parties? That the railroad company has been greatly damaged by the delay in making the survey and the intervening withdrawal of the land is indisputable. The grant, however, was accepted with full notice of the possibility of delay in making the survey and the chances of the indemnity lands being taken or reserved for a governmental purpose. "The railroad company accepted the grant of Congress subject to the possibility of delay in the surveying, as well as to the power of the Land Office to determine when the land should be surveyed. The action or nonaction of the Land Department in such a matter cannot be controlled by the judiciary, unless perhaps in a case in which it appeared, beyond question, that its refusal to order the survey was merely arbitrary and without any real excuse." *Oregon & C. R. Co.* v. *United States,* 189 U. S. 116, 118, 47 L. ed. 732, 733, 23 Sup. Ct. Rep. 620.

This, however is not an action to compel a survey. The plight in which plaintiff finds itself is not different from the difficulties frequently experienced by citizens who contract with

the government. Mere delay on the part of the officials of the government, however unjust or inexcusable, is a hazard which the contractor assumes, and, unless expressly forbidden by statute or clearly arbitrary, their action is beyond the control of judicial process.

As we have observed, until selection is made, lands within the indemnity railroad limits are public lands, and no right of selection exists until survey is made. It follows that at the date of the executive order including the lands in controversy within the forest reserve they were public lands and subject to the control of Congress. As was said in the *Morrison Case,* supra, "The disposition by the President, under the authority of Congress, was a disposition by Congress." We think that on no theory can the blanket selections of plaintiff company be held to have taken the lands out of the public domain and beyond the control of Congress. No lands capable of identification until survey were embraced in these selections. The law restrained plaintiff from making selections until a survey of the lands had been completed. If, therefore, when that time arrived, "the lands from which the deficiency was to be supplied had been appropriated by Congress to other purposes, the right of selection became a barren right, for until selection was made the title remained in the government, subject to its disposal at its pleasure." *Kansas P. R. Co.* v. *Atchison, T. & S. F. R. Co.* 112 U. S. 414, 421, 28 L. ed. 794, 797, 5 Sup. Ct. Rep. 208.

The title to the lands in question being in the United States at the date of the executive order withdrawing them for forestry purposes, it follows that plaintiff's action must fail, not only on the merits of the case, but because the suit is one against the United States. *Louisiana* v. *Garfield,* 211 U. S. 70, 53 L. ed. 92, 29 Sup. Ct. Rep. 31; *New Mexico* v. *Lane,* 243 U. S. 52, 61 L. ed. 588, 37 Sup. Ct. Rep. 348.

The decree is affirmed with costs.                *Affirmed.*

An appeal to the Supreme Court of the United States was allowed May 12, 1917.