137 So.2d 6 (1962)
E.B. CONOLEY et ux., Appellants,
v.
Henry O. NAETZKER, Jr., et Ux., Appellees.
No. 2524.
District Court of Appeal of Florida. Second District.
January 17, 1962.
Rehearing Denied February 8, 1962.
*7 G.B. Fishback, Fishback, Williams, Davis & Dominick, Orlando, for appellants.
Charles J. Collins, Jr., and James A. Urban, Steed, Steed & Urban, Orlando, for appellees.
ALLEN, Judge.
This appeal seeks review of a final judgment in ejectment wherein the lower court after a mistrial granted plaintiffs' motion for judgment in accordance with their motion for directed verdict at the close of the evidence on which the court had reserved ruling. Appellants were defendants in the action. The parties will be referred to as they appeared in the lower court.
The subject matter of this dispute is a roughly triangular parcel of dry land, formerly part of the bed of Lake Conway in Orange County. Plaintiffs and defendants are the upland owners to the west and east respectively of said parcel, their respective properties being located on the north shore of Lake Conway as it now exists. Plaintiffs base their right to possession of the disputed parcel on a deed to them in July, 1957, from the Trustees of the Internal Improvement Fund which recites that the land conveyed is "a parcel of reclaimed lake bottom." In September, 1957, defendants erected a fence across said land, depriving plaintiffs of possession of roughly the east half of the parcel encompassed by the deed from the Trustees. Defendants deraign title to their upland as owners under a government patent from the United States to their predecessor in title. They claim title to the former lake bed up to the fence line by virtue of the doctrine of reliction and assert that the water receded gradually and imperceptibly from the former shore of Lake Conway some thirty or more years ago; and that the now dry lake bed has come to form a natural accretion to the land to which they hold title. Plaintiffs, however, contend that the recession of the waters was perceptible and accomplished by drainage thereby rendering the former lake bed reclaimed land and vested in the state.
The cause was tried mainly on the issue of what had caused the lake to recede. The plaintiffs produced testimony indicating that a fairly rapid drop in the level of the lake had coincided with the putting down of drainage wells in the early twenties. Defendants produced testimony that recession of the lake level had been gradual, resulting from at least partially natural causes.
If the disputed parcel was in fact reclaimed land resulting from drainage operations, then defendants as riparian owners on a navigable waterway could not have acquired title through reliction. The controlling case on this question is Martin v. Busch, 1927, 93 Fla. 535, 112 So. 274.
The jury was unable to reach a verdict. Thereafter, however, the court directed a verdict for plaintiffs stating as its reasons therefor in a memorandum opinion "that collateral attack may not be made upon the finding of the Secretary of Agriculture and the Trustees of the Internal Improvement Fund, that they were reclaimed lands, since they are not parties to the suit." *8 (Emphasis added.) The court further found the issue of reliction to be immaterial and made no decision as to this defense.
Defendants contend that the finding by the Trustees that the land in question was reclaimed is not binding on the parties in this case and that collateral attack may be made on said finding without making the Trustees a party. Plaintiffs cite Anderson v. Collins, Fla.App. 1959, 111 So.2d 44, and Pembroke v. Peninsular Terminal Co., 1933, 108 Fla. 46, 146 So. 249, as authority that said finding by the Trustees binds private litigants in a collateral suit, the Trustees not having been made a party.
Assuming that the case should have been retried on the issue of reliction, defendants contend that the doctrine of reliction applies if the lowering of the lake level was gradual and imperceptible even though said lowering was brought about by a combination of natural and artificial causes. Plaintiffs, on the other hand, assert that even if the lowering was gradual and only partially the result of artificial causes, it cannot be deemed to have been brought about by reliction. These contentions relate to various instructions either given by the lower court or which it refused to give.
We deem it unnecessary to pass upon the question of reliction since we must affirm the lower court's ruling that the finding by the Trustees that the subject land was reclaimed lake bottom, which finding is reflected in the certificate of the Commissioner of Agriculture attached to the deed, cannot be collaterally attacked in the manner attempted below.
The principles enunciated in Pembroke v. Peninsular Terminal Co., 1933, 108 Fla. 46, 146 So. 249, supra, are partially controlling as to the outcome of the instant case. In that case a deed by the Trustees of submerged lands recited that the lands conveyed were lands upon which the water was not more than three feet deep at high tide and were separated from the shores by a channel or channels not less than five feet deep at high tide. Such a finding was a statutory prerequisite to the authority of the Trustees to sell the land in question and therefore essential to the validity of the deed. As a defense to the foreclosure of a vendor's lien held by the grantee of the Trustees, the purchasers attempted to have the deed to the plaintiff by the Trustees declared a nullity by attacking their recited findings as to water depth over the submerged land conveyed. Neither the Trustees nor the State were parties to the suit. The Supreme Court held that the attempted defense was a collateral attack in a suit between private parties upon the validity of the action taken by an official public body charged with the duty of determining certain facts before acting and was therefore not allowable. The Court recognized that such findings would have been subject to a direct attack in proceedings to enjoin the sale but that they could not be collaterally attacked in a private suit eight years after the Trustees had acted. The Court stated at page 258 of 146 So.:
"The presumption is that the trustees, being public officials of the state, complied with their duty under the law, and that they correctly ascertained the facts warranting their action. This presumption is to all intents and purposes a conclusive one when attempted to be put in issue by a collateral attack in a suit between private parties; * * *."
The policy to be subserved by the Court's holding was thereafter expressed as follows:
"* * * It would certainly be a dangerous and unsound public policy to make the validity of land titles dependent upon the ability of those collaterally attacked or defending such titles to produce evidence of this character to defeat or sustain a deed made by the trustees under the state's authority."
*9 The evidence to which the Court referred related to water depth at the time the conveyance by the Trustees was made.
By virtue of § 253.36, F.S.A., title to reclaimed lands is vested in the Trustees of the Internal Improvement Fund. Section 253.37, F.S.A., confers upon the Trustees the power to dispose of such lands and further provides:
"* * * [T]hat in making sales of such land the trustees shall give first right to purchase to any adjacent owner thereof who desires to complete or square up any fractional section now owned by him * * *."
Defendants have not raised any question that the sale by the Trustees to plaintiff was not in conformance with statutory requirements nor do they contend that they were denied an opportunity to protest the sale at the time it took place. Neither does the record reflect that defendants in any manner sought to enjoin the sale by appropriate court action. Since defendants have not shown that they were denied any opportunity to make a direct attack on the findings by the Trustees, they are in no way prejudiced by being foreclosed from doing so collaterally. See generally, Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; 2 Davis, Administrative Law, § 18.10, p. 615.
In the case of Hayes v. Bowman, Fla. 1957, 91 So.2d 795, riparian owners on Boca Ciega Bay sought in a declaratory judgment action a determination that a proposed fill on submerged lands in the bay by grantees of the Trustees of the Internal Improvement Fund constituted an encroachment on their riparian rights. The Supreme Court held that the proposed fill did not infringe on riparian rights. The tidal lands at issue had been disposed of by the Trustees pursuant to § 253.12, F.S.A. Under that statute the Trustees are charged with the duty to see that the sale of submerged lands will not interfere with the rights of riparian owners. The statute also makes abundant provision for direct attack on the sale of submerged lands permitted to be disposed of thereunder. The suit was between private parties and no collateral attack as such was made on findings by the Trustees, preliminary to the sale, relating to the protection of the interests of riparian owners and the public. However, the Court, speaking through Justice Thornal, stated at p. 802:
"It appears to us that our position is strengthened when we take note of the fact that the Trustees of the Internal Improvement Fund are five constitutional officers of the executive branch of the government. If we are ever to apply the rule that public officials will be presumed to do their duty, it would appear to us to be most appropriate in this instance. Certainly we are not to assume that in the supervision and disposition of submerged lands the Trustees will knowingly ignore the rights of upland owners. It is to be assumed that they will exercise their judgment in a fashion that will give due regard to private rights as well as public rights. This Board would appear to be the most appropriate repository of the responsibility to be exercised in these matters in the first instance. The exercise of their judgment should not be subjected to adverse judicial scrutiny absent a clear showing of abuse of discretion or a violation of law. * * *" (Emphasis supplied.)
In the instant case there was considerable evidence, though contradicted, reasonably pointing to the conclusion that the lands at issue were in fact reclaimed lake bottom. Certainly there is nothing in the record to suggest that the Trustees, prior to the sale, abused their discretion by so finding. Nor as aforesaid, is there anything in the record showing that the sale was made in a high handed manner without regard to the rights of adjacent owners such as would amount to an abuse of discretion.
*10 Our position is further strengthened by our prior decision in Anderson v. Collins, Fla.App. 1959, 111 So.2d 44, supra. In that case the plaintiffs sought to avoid a sale of submerged sovereignty lands in Boca Ciega Bay. The complaint alleged that the Trustees of the Internal Improvement Fund were guilty of a gross abuse of discretion amounting to a fraud on the public by failing to investigate the truth of representations by private applicants for deed concerning their ownership of adjacent uplands when such uplands were owned by the City of St. Petersburg. In that case the Trustees were joined as parties defendant with the grantees of the submerged lands. We held that, in the absence of allegations of any protest made by the city or that any action was taken to enjoin the Trustees from deeding the property within 30 days after a hearing as provided by statute or allegations as to why the parties waited five years after the deeds and after they had participated in another hearing on the same question to bring suit, the complaint failed to state a cause of action.
It has long been the position of the federal courts that they will not review findings of fact by the land department within its province to make; Daniels v. Wagner, 1915, 237 U.S. 547, 35 S.Ct. 740, 59 L.Ed. 1102; nor will they permit in actions between private parties collateral attack on government surveys; Horne v. Smith, 1895, 159 U.S. 40, 15 S.Ct. 988, 40 L.Ed. 68. In this latter respect see also Stonewall Phosphate Co. v. Peyton, 1897, 39 Fla. 726, 23 So. 440. The U.S. Supreme Court also has held that a patent issued by the land department cannot be attacked collaterally but only in a direct proceeding instituted by or for the government. Lee v. Johnson, 1885, 116 U.S. 48, 6 S.Ct. 249, 29 L.Ed. 570. See, also, DeCambra v. Rogers, 1902, 189 U.S. 119, 23 S.Ct. 519, 47 L.Ed. 734.
Under the facts presented in the instant case the plaintiffs were entitled to a judgment in this ejectment action on the strength of their deed. The lower court was correct in ruling that the findings by the Trustees of the Internal Improvement Fund which justified their issuing that deed are not subject to collateral attack in a suit between private parties in the absence of a showing that their discretion was abused thereby or that defendants were never afforded an opportunity of making a direct attack on the sale.
Affirmed.
SHANNON, C.J., and SMITH, J., concur.