## SPARKS & Another v. PIERCE & Others.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF DAKOTA.

Submitted October 14, 1885.—Decided November 16, 1885.

Mere occupancy of the public lands and making improvements thereon give no vested right therein as against the United States or any purchaser from them.

To entitle a party to relief in equity against a patent of the government he must show a better right to the land than the patentee, such as, in law should have been respected by the officers of the Land Department, and being respected would have given him the patent. It is not sufficient to show that the patentee ought not to have received the patent.

A person who makes improvements upon public land, knowing that he has no title, and that the land is open to exploration and sale for its minerals, and makes no effort to secure the title to it as such, under the laws of Congress, or a right of possession under the local customs and rules of miners, has no claim to compensation for his improvements as an adverse holder in good faith, when such sale is made to another and the title is passed to him by a patent of the United States.

This was an action to recover a parcel of mining ground, situated in Lawrence County, in the Territory of Dakota, and claimed by the plaintiffs under a patent of the United States, bearing date March 22, 1880, and issued to them upon an entry made November 30, 1877. The complaint alleged that, on the 11th of December, 1878, the plaintiffs were the owners in fee and possessed of the demanded premises, deriving their title under the said patent of the United States, founded upon the entry mentioned; that afterwards, on the 12th of said December, while they were thus seized and possessed of the premises, the defendants, without right or title, entered upon them, ousted the plaintiffs therefrom, and had ever since unlawfully withheld them to the damage of the plaintiffs of five hundred dollars. It also alleged that the value of the rents and profits of the premises from the entry of the defendants had been ten dollars a month; and it prayed judgment for the possession of the premises, for the damages sustained, and for the rents and profits lost.

The answer of the defendants denied generally the several

allegations of the complaint, except as stated therein, and then set up specially, by way of counterclaim, various matters which they contended constitute in equity a good defence to the action and entitles them to a portion, at least, of the demanded premises, or to compensation for their improvements thereon.

The matters set forth as grounds for equitable relief were alleged upon information and belief, and were substantially these:

That on the 28th of February, 1877, the land in controversy, with other land adjacent thereto, was appropriated and occupied as a town site and for town-site purposes, and as such was laid out into lots, blocks, streets and alleys, and designated as Central City, having at that time about one hundred inhabitants; that this number increased until, on March 22, 1880, the date of the plaintiffs' patent, the place became an important one, containing about two thousand inhabitants;

That on the said 28th of February, 1877, the grantor of the defendants was in the peaceful occupation and possession of the land in controversy as a lot in said Central City, and that on the 12th of December, 1878, he sold them the lot with the improvements thereon for a valuable consideration;

That after the said 28th of February, 1877, the plaintiffs, without legal right, caused certain ground within the town site, including that in controversy, to be surveyed for a placer mining claim, and an application for a patent based upon that survey to be filed in the United States land office at Deadwood, in the county of Lawrence;

That, within the time required by law, the inhabitants of the town, including the grantor of the defendants, filed a protest in the land office against the issuing of the patent, basing the protest upon the ground, among other things, that the land was subject to the prior rights of the town-site occupants, and was not mineral; but that, notwithstanding the protest, the local land officers, on the 30th of November, 1877, received from the plaintiffs the price of the land as a placer claim, and the fees prescribed by law, and allowed their entry of the same; that, subsequently, on the 22d of April, 1877, the Commis-

sioner of the General Land Office reviewed the proceedings, and directed that a patent issue to the plaintiffs for the mining claim, but with a reservation from the grant of all town property, rights upon the surface, and all lots, blocks, streets and alleys, and all houses, buildings, and improvements thereon not belonging to the plaintiffs, and all rights necessary to the occupation and enjoyment of the same; that, subsequently, on the 7th of November, 1878, the Commissioner suspended the entry, and ordered that a hearing be had before the officers of the local land office, to determine the date when the land was first occupied as a town site, the nature and extent of such occupancy, and the improvements thereon, and whether the land was mineral or non-mineral in its character; that such hearing was commenced on the 26th of November, 1878; that both parties submitted their testimony to the local officers, who, on the 20th of January, 1879, decided, in substance, that the land was valuable for mineral, but had been appropriated for town-site purposes prior to any appropriation by the plaintiffs, and that the land should be awarded to the occupants of the town site, including the defendants, subject to the right of the plaintiffs to mine and extract the gold therefrom, if, in so doing, they did not materially interefere with the possession, buildings, and improvements of the town occupants, including the defendants; that the occupants and plaintiffs were satisfied with this decision, and no appeal was taken therefrom, but, on the contrary, an appeal was waived; that, notwithstanding this, on the 6th of October, 1879, the Commissioner reviewed the decision of the local land officers, and held that the town-site claimants and occupants, including the defendants, had no right whatever to the land, upon the sole ground that it was mineral, and, therefore, not subject to appropriation except under the mineral law of 1872; that he accordingly dismissed the protest, and directed that the patent be issued to the plaintiffs, without any exception or reservation therein to protect the possession and improvements of the defendants, and that the patent was accordingly issued to the plaintiffs; whereas the defendants insist that it should have contained a reservation excepting therefrom all town property rights, and all houses,

buildings, structures, lots, blocks, streets, and alleys, and other improvements on said land, not belonging to the plaintiffs, and all rights necessary or proper to the occupation, and possession, and enjoyment of the same; that its issue, without such reservation, was contrary to law; that the plaintiffs, therefore, hold the land covered by it in trust for the defendants; and that it should be conveyed to them, they offering to pay their just proportion of the expenses of procuring the patent.

The matters set forth by the defendants as grounds for compensation for improvements on the premises were these: that they were made by them or by their grantor, he at the time occupying the premises in good faith against all persons except the United States, and they having purchased the premises of him for a valuable consideration and having since then occupied them, claiming title thereto in like good faith adversely to the plaintiffs. The answer alleged that the improvements consisted of two buildings, each worth $750, and that the value of the land did not exceed $100.

To each of the special answers the plaintiffs demurred on the ground that it did not state facts sufficient to constitute a defence to the action nor a counterclaim in defendants' favor against them. The demurrers were sustained by the court, and the defendants declining to plead further, and electing to stand upon their special answers, the plaintiffs had judgment for the possession of the premises. On appeal to the Supreme Court of the Territory the judgment was affirmed. To review that judgment the case was brought here on appeal.

*Mr. G. C. Moody* for appellants.

*Mr. J. W. Smith* for appellees.

Mr. Justice Field delivered the opinion of the court. He stated the facts in the language above reported, and continued:

This case, as seen by the pleadings stated, is in its main features similar to that of *Deffeback* v. *Hawke*, just decided, *ante*, 392. The plaintiffs here, as in that case, rely upon a patent of the United States for the land in controversy, issued under

the laws for the sale of mineral lands. It is admitted that the land was mineral in its character, and the patent itself is evidence that all the requirements of the law for its sale were complied with. The defendants, as in that case, set up as ground for equitable relief against the enforcement of the rights of the plaintiffs under the patent, that their grantor occupied the land as a lot in a town site—here the town site being that of Central City, there that of Deadwood City—and made improvements thereon before the plaintiffs claimed it as mining ground, or took proceedings to procure its title, and that he sold the lot to them, with its improvements, for a valuable consideration. They, therefore, as the defendant did in the other case, deny the right of the plaintiffs to acquire the premises as a mining claim on the town site; but they also contend that if the plaintiffs had that right, the patent issued to them should have contained reservations excluding from its operation the buildings and improvements of the defendants, and whatever was necessary for their use and enjoyment. They also contend, that if this defence be not sustained, they should be allowed compensation for their improvements on the premises.

The case differs, however, in one important particular from that of *Deffeback* v. *Hawke.* There an entry had been made of the town site in the land office of the United States by the probate judge of the county for the benefit of the occupants of the town. The entry, it is true, was afterwards cancelled by the Secretary of the Interior, so far as the premises in controversy in that case were concerned. The proceedings showed, however, a desire on the part of the occupants to secure the title of the United States, and not to rest upon their naked possession. Here it does not appear that any effort had been made, either by the authorities of the town, or by the probate judge of the county, or by any one else on behalf of the occupants of the town; or by the defendants or their grantor, to acquire the legal title. The case presented, therefore, is that of occupants of the public lands without title, and without any attempt having been made by them, or by any one representing them, to secure that title, resisting the enforcement of the

patent of the United States, on the ground of such occupation. Mere occupancy of the public lands and improvements thereon give no vested right therein as against the United States, and consequently not against any purchaser from them. To entitle a party to relief against a patent of the government, he must show a better right to the land than the patentee, such as in law should have been respected by the officers of the Land Department, and being respected, would have given him the patent. It is not sufficient to show that the patentee ought not to have received the patent. It must affirmatively appear that the claimant was entitled to it, and that, in consequence of erroneous rulings of those officers on the facts existing, it was denied to him. *Bohall* v. *Dilla,* 114 U. S. 47, 51.

The question as to the allowance for improvements is disposed of by the decision in *Deffeback* v. *Hawke.* A person who makes improvements upon public land, knowing that he has no title, and that the land is open to exploration and sale for its minerals, and makes no effort to secure the title to it as such land under the laws of Congress, or a right of possession under the local customs and rules of miners, has no claim to compensation for his improvements as an adverse holder in good faith when such sale is made to another and the title is passed to him by a patent of the United States.

*Judgment affirmed.*