PEABODY GOLD MIN. CO. v. GOLD HILL MIN. CO.

(Circuit Court of Appeals, Ninth Circuit.　October 21, 1901.)

No. 685.

1. MINERAL LANDS--VALIDITY OF PATENT.

A patent for mineral lands, which has been in existence for 16 years, and which protects rights that have been continuously exercised by the patentee and his predecessors in interest for nearly 50 years, will not be declared void as to any portion of the granted premises solely for the reason that upon its face it purports to be based on a single mining location, and conveys more than may lawfully be included in one location, when in fact the claims were several, and might have been united in a single patent upon a proper presentation of the facts.

2. SAME--PRESUMPTION.

Where there might have been circumstances which, under existing laws, would have authorized the land department to include in a patent for mining ground all the ground therein described, it will be presumed in support of the patent, when collaterally attacked, that such circumstances existed.

8. SAME—RIGHT TO ATTACK PATENT FOR FRAUD—SUBSEQUENT LOCATION.

A suit to set aside a patent for mineral lands on the ground of fraud practiced on the land department cannot be maintained by a private

individual, who had at the time no claim upon any of the lands, but made a location thereon subsequently, such ground of invalidity being available only to the United States.

**4. SAME—GROUNDS FOR CANCELLATION OF PATENT—FRAUD.**

Allegations in a bill for the cancellation of a patent for mineral lands that the several claims embraced therein were falsely and fraudulently represented by defendant to the land department to be quartz claims, when they were, in fact, placer claims, afford no ground for the cancellation of the patent, where the fact that they were placer claims would not have precluded the owner from obtaining a single patent therefor, and it is not shown that the government was in any way injured by the false representation.[1]

**5. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—ALLEGATIONS IN PLEADINGS.**

A complainant cannot invoke the jurisdiction of a federal court by setting forth the contention which will be made by defendant in answering the bill upon which a federal question will arise.[2]

Appeal from the Circuit Court of the United States for the Northern District of California.

The appellant, the Peabody Gold Mining Company, brought a suit against the appellee, the Gold Hill Mining Company, to quiet its title to certain mining property situate in Nevada county, Cal., consisting of three claims known as the "Peabody," the "Suum Quique," and the "Croesus." The bill alleges that these three claims constitute one mining property. The facts upon which relief is sought as set forth in the bill present two distinct causes of suit. So far as the Peabody claim is concerned, the bill alleges no more than title in the complainant and wrongful trespass thereon by the defendant. As to the other claims, the Suum Quique and the Croesus, it is alleged that both were located on September 7, 1898, and that the whole of the former and a portion of the latter are included within the surface area of the Gold Hill Quartz Lode Mining Claim, which was patented to the appellee on August 9, 1883; that the appellee's patent was obtained upon an affidavit showing that the Gold Hill Quartz Lode Mining Claim had been located about the year 1852, after the discovery of a vein or lode within its limits, which affidavit the bill alleges was false and fraudulent; that in fact the claim was not located as a quartz claim, but comprised a consolidation of numerous separate and distinct placer claims, none of which were valid as quartz claims under the mining laws or mining rules and regulations of the time; and that the said patent was fraudulently obtained. The bill also alleges that the patent was issued in violation of the act of congress of May 10, 1872, limiting the right of the land department to issue a patent for a mining claim to surface ground 300 feet on each side of the middle of the vein or lode patented; that the whole of the Suum Quique and a portion of the Croesus are located upon land included within the surface boundaries of the Gold Hill claim, but which lie east of a line drawn parallel with and 300 feet east of the center of the lode. It is alleged that as to the land so included in the patent exterior to a line parallel with and 300 feet from the said lode or vein the patent is void. The bill further alleges that in violation of the rights of the appellant the appellee has trespassed upon the appellant's said claims beyond the 300-feet line from the center of the lode, asserting its right so to do under its patent. To this bill the appellee demurred for want of equity, and for the reason that it appeared from the bill that the Suum Quique and a portion of the Croesus lodes are within the patented surface boundaries of the Gold Hill claim; and further demurred to so much of the bill as concerns the Peabody claim for the reason that the court has no jurisdiction thereof.

---

[1] Cancellation of patents to public lands, see note to Hartman v. Warren, 22 C. C. A. 38, pars. 7–12.

[2] Federal questions as conferring jurisdiction on United States courts, see notes to Bailey v. Masher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

since no federal question is involved. The circuit court sustained the demurrer, and from that ruling the present appeal is taken. 97 Fed. 657, 106 Fed. 241.

A. H. Ricketts, for appellant.

E. W. McGraw, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The bill directs an attack against the patent upon two grounds: First, that it covers surface ground in excess of 300 feet in width from the center line of the lode, and is as to such excess void; second, that it was procured by false representations to the officers of the land department, and therefore should be set aside and annulled. As to the first ground, it is alleged in the bill that up to the time of the issuance of the patent, August 9, 1883, and for some time thereafter, there had been discovered upon the premises covered by the patent but one vein or lode, and that lode or vein, as shown upon the map and the field notes accompanying the patent, ran in a straight line along the western boundary of the patented premises. Does it follow from these facts that the patent is void as to the surface therein contained which lies beyond and eastward of the line 300 feet from the center of the lode? If, upon any theory of the facts, the patent may be sustained, it is the duty of the court to indulge the presumption that the facts existed, and were properly brought to the attention of the officers of the land department, before the patent was issued. All intendments are in favor of the validity of the patent. Before it was issued, the officers of the land department were required to ascertain whether the necessary antecedent steps had been taken which justified its issue. They acted upon the papers and proofs which were presented, and thereupon based their conclusion. It was their duty to investigate the facts, and it must be presumed that such investigation was had. The issuance of the patent was a judicial determination of the patentee's rights. It cannot be disputed that facts might have existed which would have authorized the issuance of the patent for all the surface ground described therein as a quartz lode claim. We think the bill itself suggests such a state of facts. It sets forth the survey of the mining claim and the affidavits which accompanied it. It appears therefrom that the survey was made in August, 1881. In the report of the deputy mineral surveyor and in the affidavit of the oldest discoverer of the Gold Hill ledge and the first locator of a claim thereon it was stated that the first discovery of quartz rock on the lode was made in the year 1850, and that thereupon numerous other claims were made, all of which were 30 by 40 feet by local mining rules; that from the time of the discovery the said mining claims had been continuously mined, and that at the time of the survey $3,000,000 had been taken therefrom; that in 1877 the appellee became the owner of the mining premises which were included in the

patent, having acquired the same by purchase from the original locators. If it be true, as shown by these exhibits to the bill, that the claim thus patented consisted of an aggregation of small quartz mining claims located under the local mining rules and regulations, which claims were subsequently conveyed to the appellee, there was no reason why they might not all have been combined and included in one patent. The right to so combine them and to obtain the patent therefor is not impaired by the fact that the proceedings on which the patent was issued purport to have been instituted and carried out for the acquisition of a single quartz mining claim under the provisions of the act of congress of May 10, 1872. A patent which has been in existence for 16 years, and which protects rights that have been continuously exercised by the patentee and his predecessors in interest for nearly 50 years, will not be declared void as to any portion of its granted premises solely for the reason that upon its face it purports to be based upon a single mining location, and conveys more than may lawfully be included in one location, when in fact the claims were several, and might have been united in a single patent upon a proper presentation of the facts. In Polk's Lessee v. Wendal, 9 Cranch, 87, 3 L. Ed. 665, it was held that a patent of the state of North Carolina for 25,000 acres of land was not void upon its face for the reason that it covered more than 5,000 acres, which was the limit prescribed for a single entry by the laws of that state; and that there was nothing to prevent a person from making several entries, or from purchasing the rights acquired by other entrymen, and uniting several entries in one survey and patent. So, in Refining Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875, where the patent described by metes and bounds premises containing 164.64 acres, more or less, it was held that a patent issued subsequently to the passage of the act of July 9, 1870, may embrace a placer claim consisting of more than 160 acres, and including as many adjoining locations as the patentee had purchased. Said the court in that case:

"A patent in a court of law is conclusive as to all matters properly determinable by the land department, when its action is within the scope of its authority; that is, when it has jurisdiction under the law to convey the land. In that court the patent is unassailable for mere errors of judgment. Indeed, the doctrine as to the regularity and validity of its acts, where it has jurisdiction, goes so far that if, in any circumstances, under existing law, a patent would be held valid, it will be presumed that such circumstances existed. * * * On the other hand, a patent may be collaterally impeached in any action, and its operation as a conveyance defeated, by showing that the department had no jurisdiction to dispose of the lands; that is, that the law did not provide for selling them, or that they had been reserved from sale or dedicated to special purposes, or had been previously transferred to others. In establishing any of these particulars the judgment of the department upon matters properly before it is not assailed, nor is the regularity of its proceedings called into question; but its authority to act at all is denied, and shown never to have existed."

In Tucker v. Masser, 113 U. S. 203, 5 Sup. Ct. 420, 28 L. Ed. 979, the doctrine of Refining Co. v. Kemp was carefully considered and affirmed.

The appellant relies upon the decision of this court in Lakin v. Roberts, 4 C. C. A. 438, 54 Fed. 461, and particularly upon the language of the opinion where it was said: ,

"The land department, therefore, had no power to issue a patent for a greater width of land than 300 feet, and the patent in this case in excess of 300 feet is void."

The judgment in that case was rendered upon an agreed statement of facts, in which it was made to appear that the land in controversy, which was occupied as a town site, was included within the area of the patented mining claim, but that there had never been any actual possession of that portion of the surface ground by the mining company, and that the right of the miners in that locality to a mining claim was not determined by rule or custom, but depended upon actual occupation of the surface. Under this admission of the facts, the land in controversy in that case was held to be excluded from the operation of the patent. The admitted facts effectually rebutted the presumption which otherwise would have attended the patent, the presumption that the locator was lawfully entitled to all the premises described in his grant, and that all the previous requisites of the law had been complied with.

But the bill, after setting forth the patent, and the representations made to the surveyor general upon which it was issued, proceeds to allege that the representations were false, and were fraudulently made, with the intention to deceive the surveyor general; and it seeks upon that ground to impeach and set aside the patent. It is charged that in the affidavit accompanying the survey it was falsely stated that the original mining claims which were contained in the survey were quartz lode mining claims, whereas in fact they were placer claims located and held in accordance with the laws of miners on Gold Hill, and that none thereof was valid under the mining laws of any district, or rules, regulations, or customs for the acquisition and holding of quartz claims. In brief, the allegation is that the surveyor general was led to believe that the claims were quartz claims, when the fact was that they were placer claims. We discover in these facts no ground upon which to set aside the patent. It is not alleged that fraud was practiced against the rights of the appellant. On the contrary, it appears from the bill that the location of the appellant's claims dates no further back than 1898. The present suit was commenced almost immediately after the locations were made. Under such circumstances a suit to set aside the existing patent on the ground of frauds alleged in the bill can only be instituted in the name of the United States. Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226. But, conceding it to be true that the nature of the mining claims was falsely represented as alleged in the bill, it does not follow that fraud was practiced upon the government, or that title was thereby acquired which could not lawfully have been acquired by the patentee. The fact that the claims were placer mining claims instead of quartz mining claims would not have precluded the owner thereof from obtaining a single patent therefor. The bill does not advise us that the government

has been in any way injured by the deception or by the false representation. The price per acre paid for the land patented as a quartz mining claim was greater than would have been the price per acre for placer claims. In short, the averments of the bill, viewed in any possible light, would be wholly insufficient to justify a court of equity, even at the suit of the United States, in setting aside the patent on the ground that fraud was practiced in obtaining it.

The foregoing discussion refers only to the averments of the bill concerning trespass upon those portions of the mining ground claimed by the appellant which lie within the surface ground patented to the appellee. So far as the remaining premises are concerned, and upon which the bill charges that the appellee has trespassed, no ground for the jurisdiction of the circuit court is presented. The bill attempts to show the existence of a federal question by setting forth the contention which will be made by the appellee when it comes to answer the bill. This is insufficient. Metcalf v. City of Watertown, 128 U. S. 586, 9 Sup. Ct. 173, 32 L. Ed. 543; Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Mining Co. v. Turck, 150 U. S. 138, 14 Sup. Ct. 35, 37 L. Ed. 1030; Railroad Co. v. Lewis, 173 U. S. 457, 19 Sup. Ct. 451, 43 L. Ed. 766.

The decree of the circuit court will be affirmed.