**ALASKA CONSOLIDATED OIL FIELDS et al. v. RAINS.\***

**No. 6366.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 5, 1932.

WEBSTER, District Judge, dissenting.

\*Rehearing denied February 23, 1932.

Winter S. Martin, Arthur Collett, Jr., and Harry S. Redpath, all of Seattle, Wash., for appellants.

Donohoe & Dimond, Anthony J. Dimond, and Thomas M. Donohoe, all of Cordova, Alaska, for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and WEBSTER, District Judge.

WILBUR, Circuit Judge.

Appellee brought this action to foreclose mechanics' liens for work done by himself and others in connection with the drilling of oil wells upon "certain oil mining claims" described in the complaint. The trial court entered a decree foreclosing such liens, and appellants have appealed on the ground that all the lands described in the complaint and in the decree, with the exception of Chilcat No. 11 claim, were being operated by appellants under oil and gas prospecting permits issued to them under the Oil Leasing Act of Congress, approved February 25, 1920 (41 Stat. 437). It is claimed by appellants that "the title to the patented and permit lands aforesaid rests and did rest in the United States of America during all the time and times said work was performed or materials furnished." Appellants state the principal issue as follows: "Have defendants (appellants) such an interest in said oil claims under the oil and gas prospecting permits as to subject them to the alleged liens of the plaintiff (appellee)?"

It is clear that the decree of foreclosure would not be binding in any way upon the United States, and that the only interest which could be sold under the decree would be the interest of the appellants in and to the land in question. It would be necessary in order that the rights of the permittee be transferred to the purchaser at the foreclosure sale that the purchaser secure the consent of the Secretary of the Interior to the assignment. 30 USCA § 187. If the appellants have such an interest in the land as may properly be subjected to a decree of foreclosure for mechanics' liens for labor done upon the property, they cannot be

heard to complain of the fact that a purchaser at a foreclosure sale would not thereby secure title to the permit, in the absence of the consent of the Secretary of the Interior and the acceptance by him of the purchaser as the permittee under the original permit. So far as the interest of the United States is concerned, it is fully protected by the Oil Leasing Act.

 The claim of appellants seems to be that foreclosure of a mechanic's lien is not authorized by the Mechanic's Lien Law of the territory of Alaska. The claim is stated as follows: "The liens attempted to be foreclosed in the case at bar are based upon Chapter 38 of the Session Laws of Alaska for 1921. Under this Act it is provided that liens shall exist for certain specified work, etc., done by virtue of a contract expressed or implied with the owner, part-owner or lessee of any interest in real estate, or with the authorized agent, owner, or part-owner, or lessee of such owner."

The act of the territorial Legislature referred to (chapter 38, Session Laws of Alaska, 1921) is in part as follows:

"Section 1. Every person, corporation, firm, association, or co-partnership, material man, artisan, laborer, or mechanic who does work or labor upon, or furnishes material, machinery or fuel for constructing, altering, digging, drilling, boring, operating, completing or repairing of any gas well, oil well or other well, or for altering, repairing, or constructing any oil derrick, oil tank, oil or gas pipe line, by virtue of a contract expressed or implied, with the owner, part owner, or lessee of any interest in real estate or with the authorized agent of the owner or part owner or lessee of such owner, * * * shall have a lien to secure the payment thereof upon said gas well, oil well or other well, or upon said oil derricks, oil tanks, oil or gas pipe line and upon the drills, apparatus, tools, machinery, materials or equipment so furnished for or used in the construction, alteration or repairing of said oil, gas or other wells, and all buildings and appurtenances thereof and the interest, leasehold or otherwise of the owner, part owner or lessee in the plot or tract of land upon which said improvement may be located. * * *"

"Section 3. The liens provided for in this Act *shall bind the right, title and interest of the person or persons referred to in Section 1, at whose instance or request, or for whom the work or labor was done to the full extent of the interest which such person or persons had in the lienable property at the commencement of the work for which the lien is claimed* * * * and in the event that the ownership of the land, drills, apparatus, machinery, tools and equipment upon which the liens of laborers, mechanic and artisans may be claimed as hereinbefore in section one provided, is in other than the person or persons at whose instance or request or for whom the work or labor was done or there is a mortgage on such property, the liens provided for herein shall bind the interests of such owner or mortgagee therein unless within ten days after the commencement of work or labor by the possessor thereof * * * such owner or mortgagee shall post a notice in a conspicuous place * * * setting forth his interest and title in the same and that he and the same will not be responsible for claims of laborers employed in and about the same."

"Section 7. The lien provided for in this Act shall be enforced by an action in the district courts of the Territory of Alaska having jurisdiction to enforce liens, and the pleadings, processes, practice and other proceedings shall be governed by the laws of the Territory regulating the trial of actions for the enforcement of liens and said actions shall be governed *and said liens shall be construed in accordance with the provisions of Chapter 13 of the laws of the Territory of Alaska, 1915."* (Italics ours.)

By the provisions of section 7 of the act of 1921, above quoted, the territorial Legislature expressly provided that such liens shall be construed in accordance with the provisions of chapter 13 of the Laws of the territory of Alaska 1915, which provides as follows:

"Section 1. Every person who at the instance of the owner performs work or labor in, on or about a mine or mining claim in opening up, developing, sinking, drifting, stoping, mucking, shoveling, mining, hoisting or performs any other class or kind of work on, in or about a mine or mining claim necessary or convenient to the development, operation, working or mining thereof, or the extraction of the earth, rock, quartz, ore, minerals, or mineral bearing sands or gravels therefrom, or performs any work or labor in or about such mine or mining claim tending to or assisting in the separation or reduction to a commercial value of the minerals contained therein, or thereon or extracted thereform, shall have a lien on such mine

or mining claim to secure the payment of the amount due for such work or labor. * * * "

"Section 4. *The liens provided for in this Act shall bind all the right, title and interest of the person or persons at whose instance or request or for whom the work or labor was performed,* to the full extent of the interest which such person or persons had at the commencement of the work for which the lien is claimed, or subsequently acquired, up to the time of foreclosure as hereinafter set forth, *in the mine or mining claim* in or about' which the work or labor was performed. * * * " (Italics ours.)

This act, like that of 1921, provides for notice being given by the owner to prevent the lien attaching as against his interest in the property: "Section 5. All work and labor performed in, on or upon a mine or mining claim at the instance of any person in privity with, or having the right of possession, or privilege of working or mining thereon from the owner or his authorized agent, in prospecting, opening up, developing, mining, or in doing any other class of work necessary or convenient to the opening up, development or mining of such mine or mining claim, or the separation or reduction to a commercial value of the minerals therein, thereon, or extracted therefrom, shall be deemed to have been done at the instance of the owner of the mine or mining claim, and such owner's interests therein shall be subject to any lien filed in accordance with the provisions of this Act, unless such owner shall * * * give notice that he will not be responsible for the same, by posting notices in writing to that effect, in three conspicuous places on such mine or mining claim. * * * "

In considering the effect of these two statutes, the history of locators of government owned petroleum land and other rights under the statutes of the United States should be considered. For that reason, we have hereinafter quoted at considerable length from a decision of this court written by Judge Ross in Consolidated Mut. Oil Co. v. United States, 245 F. 521. In view of the decisions cited by Judge Ross in that case, and hereinafter quoted, it may be said without further reference thereto that they clearly indicate that under the Alaska statutes of 1915 and 1921 a claimant would undoubtedly have a lien for work done upon such a placer mining claim.

It was held by this court in October, 1912, in Rooney v. Barnette, 200 F. 700, 710, that a locator of mineral land prior to discovery had a right of possession which he could convey to another. It was there stated by Judge Morrow:

"The location of mineral ground gives to the locator before discovery, and while he complies with the statutes of the United States and the state and local rules and regulations, the valuable right of possession against all intruders, and this right he can convey to another.

" 'Mineral ground covered by a valid location becomes segregated from the public domain, and is the property of the locator; and, so long as the locator complies with the laws of the United States and the state and local regulations, such locator has the exclusive right and enjoyment to all the surface included within the lines of the location against all the world, and during such time such ground so segregated is not open to location by another, and any relocation of such ground during such time is void.' Syllabus by the Court in Swanson v. Kettler, 17 Idaho, 321, 105 P. 1059, affirmed by the Supreme Court in Swanson v. Sears, 224 U. S. 180, 32 S. Ct. 455, 56 L. Ed. 721; Becker v. Long (C. C. A.) 196 F. 721; Miller v. Chrisman, 140 Cal. 440, 450, 73 P. 1083, 74 P. 444, 98 Am. St. Rep. 63.

"It follows that in any view of the fact of discovery, whether made by Hastings or Stafford, the former had the right of possession, which he could convey to the latter, and by such conveyance the latter could acquire the right of possession to the ground in controversy."

This court later, in August, 1917, in Consolidated Mut. Oil Co. v. United States, 245 F. 521, supra, had occasion to again consider the rights of a person who had entered upon government land under an oil placer mining claim before discovery of oil. In an opinion written by Judge Ross, the rights of a possessor of government land, seeking to discover petroleum thereon by drill and well, are held to be subject to sale and transfer, and upon consummation of the claim by discovery the equitable title vests in the claimant beyond the power of the government to interfere with his right. For the purpose of illustrating the nature and character of the rights of a possessor of government land under the circumstances, we quote from that opinion as follows:

"Government lands, containing petroleum or other mineral oils, and that are chiefly valuable therefor, not withdrawn or otherwise reserved, may be entered and patented,

and, indeed, only can be entered and patented, under the provisions of the laws relating to placer mining claims. 29 Stat. 526 (Comp. St. 1916, § 4635). It appears from the records that the predecessors in interest of the appellants located these lands, as also the other portions of the said section, under and by virtue of the laws governing placer claims." Page 522 of 245 F.

"It is also the well-established law that in the absence of any intervening bona fide rights—and there are none in either of the present cases—the order in which the statutory requirements concerning the making of the locations are complied with is immaterial; that the marking of the boundaries of a claim may precede the discovery, or the discovery may precede the marking, and, if both are complete before the rights of others intervene, the earlier act will inure to the benefit of the locator as of the date of the later, and a complete possessory title to the premises will vest in him as of the later date. Erhardt v. Boaro, 113 U. S. 527, 5 S. Ct. 560, 28 L. Ed. 1113; Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 F. 673; Jupiter Min. Co. v. Bodie Consol. Min. Co. (C. C.) 11 F. 666; North Noonday Min. Co. v. Orient Min. Co. (C. C.) 1 F. 522; Zollars v. Evans (C. C.) 5 F. 172; Strepey v. Stark, 7 Colo. 614, 5 P. 111; Thompson v. Spray, 72 Cal. 528, 14 P. 182.

"Passing for the present any consideration of the act of Congress of June 25, 1910, known as the 'Pickett Act' (36 Stat. 847 [43 USCA § 141 et seq.]), it is entirely true that until discovery the locator can acquire no right as against the government; but it is well settled that, while in the bona fide effort to make such discovery, the ground that he has marked, in accordance with the provisions of the statute, and of which he is in the actual possession, will be protected by the courts against any forcible, fraudulent, surreptitious, or clandestine entry by any third party, although it is open to the entry of others by any legal means for the purpose of locating it under the mining laws. Sparks v. Pierce, 115 U. S. 408, 413, 6 S. Ct. 102, 29 L. Ed. 428; Belk v. Meagher, 104 U. S. 279, 287, 26 L. Ed. 735; Olive Land & Development Co. v. Olmstead (C. C.) 103 F. 568, 573; Cosmos Exploration Co. v. Gray Eagle Oil Co., 112 F. 4, 14, 50 C. C. A. 79, 61 L. R. A. 230; Rooney et al. v. Barnette et al., 200 F. 700, 119 C. C. A. 116; Garthe v. Hart, 73 Cal. 541, 15 P. 93; Horswell v. Ruiz, 67 Cal. 111, 7 P. 197; Miller v. Chrisman, 140 Cal. 440, 447, 73 P. 1083, 74 P. 444, 98 Am. St. Rep. 63; Smith v. Union Oil Co., 166 Cal. 217, 224, 135 P. 966; McCormick v. Varnes, 2 Utah, 355; Hopkins v. Noyes, 4 Mont. 550, 2 P. 280.

"That right of possession against all intruders this court in the case of Rooney v. Barnette, supra, expressly held is a right that the possessor can convey to another, as did the Supreme Court of California in Miller v. Chrisman, supra, and as have many other courts. The rights thus possessed by the locator to maintain his possession against intruders while in good faith seeking to discover minerals within the boundaries of his claim, and to convey such possession before discovery, are, as said in Miller v. Chrisman, rights of value.

"After discovery they manifestly become binding upon the government, and protected by the Constitution. While it is possible that at times oil may be found issuing from the surface of the ground (in which case discovery, of course, may be made without difficulty or expense), it is matter of common knowledge that almost always drilling is essential to such discovery, and in many sections—particularly in the region where the lands in question are situate—drilling to great depth, involving heavy costs." Pages 524, 525 of 245 F.

It was also held in that case that a placer mining claim for oil, which had not been perfected by discovery, was nevertheless protected against the admitted right of the government to deal with its own lands as it saw fit, by the provisions of President Taft's withdrawal order of September 27, 1909, which provided that: "All locations or claims existing and valid on this date may proceed to entry in the usual manner after field investigation and examination." The court held that an unperfected claim was a valid location or claim within the meaning of the withdrawal order.

It would seem clear that under these decisions a person who has taken possession of government land for the purpose of developing oil and is proceeding diligently to explore the land has such an interest therein as could be subjected to a mechanic's lien under the law authorizing liens upon mining claims. It was held in Berentz v. Belmont Oil Min. Co., 148 Cal. 577, 583, 84 P. 47, 113 Am. St. Rep. 308, that a mechanic's lien could be enforced against a placer mining oil location. Nothing is said in the opinion as to whether or not the work for which the mechanic's lien was enforced was undertaken before or after the discov-

ery of oil. It can hardly be doubted that under the Alaska Mechanic's Lien Law of 1915 (Laws of Alaska, 1915, chapter 13, supra) and Mechanic's Lien Law of 1921 (Laws of Alaska, 1921, chapter 38, supra) that laborers upon an oil well on a placer mining location would be entitled to enforce a mechanic's lien against the owner of the claim, whether the work is done either before or after the discovery of oil. Does the Oil Leasing Act of 1920 change the situation? By this law Congress established the standard of diligence on the part of a permittee, and gave the Secretary of the Interior control over the land and its development, and, upon discovery, substituted a lease of the land for a patent, but otherwise the rights of the locator remain substantially the same as before.

While it might be difficult to determine the interests of a permittee of such lands in terms of title used in the common law, it is entirely unnecessary for the purposes of this case to do so. In making this statement, we do not overlook the fact that in many states the question has arisen as to the rights of a permittee in land for which he has secured an agreement from the owner that he shall be permitted to develop oil with a view of leasing the property if oil is discovered. It has been held in some of such cases that he has no interest in the land. 40 C. J. 1059; Archer's Law & Practice in Oil and Gas Cases, p. 20; Barnsdall v. Owen (C. C. A.) 200 F. 519, 521; Brunson v. Carter Oil Co. (D. C.) 259 F. 656, 664; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okl. 719, 119 P. 260, 43 L. R. A. (N. S.) 487; Kolachny v. Galbreath, 26 Okl. 772, 110 P. 902, 38 L. R. A. (N. S.) 451; Crawford v. Ritchey, 43 W. Va. 252, 27 S. E. 220; Richlands Oil Co. v. Morriss, 108 Va. 288, 61 S. E. 762; Eastern Ohio Oil Co. v. McEvoy, 75 Kan. 515, 89 P. 1048; Phillips v. Springfield Crude Oil Co., 76 Kan. 783, 92 P. 1119.

The question here is whether or not the parties who employed the appellee to labor upon and furnish materials for an oil well they were drilling under a permit issued by the Secretary of the Interior are owners of the land, or have an interest therein, within the meaning of that term as used in the Mechanic's Lien Law of Alaska. In other words, did the Legislature of Alaska intend to give a lien to a laborer and materialman performing labor upon land held by a permittee of such a permit, and did such a permittee have such an interest in the land as was contemplated by the Legislature as the basis for foreclosure of a mechanic's lien? It is manifest that the Legislature intended to go as far in upholding or establishing the right of a laborer to his hire as was consistent with the power of the territorial Legislature. For instance, by the Mechanic's Lien Law of 1915, supra, the Legislature declared its intent in section 3 as follows: "It is hereby declared the intent of this Act to be remedial and to secure the laborer or miner the amount due for his labor, and should one class or kind of property be insufficient security therefor, then any other class or kind which may be lienable under this Act, may be concurrently concomitantly claimed and subjected thereto." Laws of Alaska, 1915, p. 31, c. 13.

In Isaacs v. De Hon, 11 F.(2d) 943, 944, this court recognized and enforced "a grubstake agreement of date February 14, 1920, under which plaintiffs were entitled to certain specified interests in any oil claims located by appellant in the Cold Bay oil field on the Alaskan peninsula." Under the agreement there in controversy, the prospector located an oil claim in the name of a third person who refused to make a conveyance of an interest in the claims to the grubstakers and refused to recognize their rights. The third person also had issued to her a permit to prospect the claim in question. The trial court decreed that the grubstakers were entitled to five-sevenths interest in one-half of the claim. This court sustained the decree regardless of the claim that the Secretary of the Interior was not a party to the action, and that permits could not be assigned without his consent, and regardless of the claim that the grubstakers were aliens. As to the latter point, it is said: "No one but the sovereign has any right to complain of a trust in real estate in favor of an alien disqualified to hold title."

With reference to the question as to whether or not the decree should have been made in the absence of the consent of the Secretary of the Interior and without knowledge as to whether or not he would confirm the assignment, the court said:

"It may be that plaintiffs will lose the fruits of this litigation by the refusal of the Secretary to approve the assignment of interests in the permit. But appellant is nevertheless held in a court of equity to the obligations he assumed in his grubstake contract.

"The Secretary of the Interior would not have been a proper party to this suit. The courts will not interfere by mandamus or

injunction with his performance of his duties under the public land laws. * * * But the courts do have power to enforce contracts with reference to lands while title thereto is held by the government. * * * "

The Circuit Court of Appeals for the Fifth Circuit, in Witbeck v. Hardeman, 51 F.(2d) 450, 451, had occasion to consider the relative rights of parties claiming a prospecting permit under the Leasing Act of February 25, 1920, supra (41 Stat. 437). The court entertained a suit in equity between Hardeman and Witbeck, each of whom had applied to the Secretary of the Interior for a permit. Witbeck made oath to his application for a permit on November 9, 1923, and mailed it with the required fees. It was received at the Land Office November 12. In the meantime, Hardeman went to the land on Sunday, November 11, 1923, and made a monument and posted notice thereon in order to obtain preferential right to a permit for thirty days. His application for a permit was received in the Land Office December 11, 1923, without fees. The contest was originally in the Land Office, and the permit was awarded to Witbeck. The permit was issued to him on May 6, 1925, whereupon Hardeman brought a bill in equity praying a decree that he be declared the equitable owner of the permit, and that Witbeck be declared a trustee of the permit and be required to assign it to him. The trial court granted the decree prayed for. It will be observed that the question before the court was as to the effect of the erection of a monument and posting a notice upon the government land involved in the permit as the initial step in a proceeding to obtain a permit from the Secretary of the Interior. In an opinion by Circuit Judge Sibley, the erection of the monument and posting of notice, as required by the Leasing Act (section 13 [30 USCA § 221]), was held to give to the locator a preferential right to a permit for prospecting for oil, and that this right was so definitely fixed by the law that the Secretary of the Interior could not arbitrarily refuse a permit. As to the Secretary it was said: "But having decided that the land shall be exploited, he must recognize the statutory preference in issuing the permit, there being no discretion to ignore this plain mandate of the law. Daniels v. Wagner, 237 U. S. 547, 35 S. Ct. 740, 59 L. Ed. 1102, L. R. A. 1916A, 1116, Ann. Cas. 1917A, 40."

The court also held that a permittee, having secured a prospecting permit from the Secretary of the Interior, had a valuable right which he could transfer in conformity with the decree of the court. Inasmuch as the decision deals with the nature of the rights of a permittee which are involved in this litigation, and in view of the fact that we concur in what was said by Judge Sibley, speaking for the court, we quote therefrom at length as follows:

"It is next urged that Witbeck has nothing that he can assign, but has only a contract with respect to land belonging to the United States which cannot be remodeled by a court, even if it ought to be, without the presence of the United States as a party. The bill is framed after the likeness of those often entertained in reference to patents under the land laws prior to the Leasing Act here involved. Daniels v. Wagner, supra, is an example. In that case the question of the indispensability of the United States as a party was raised, but at page 567 of 237 U. S., 35 S. Ct. 740, was dismissed as too obviously without merit to deserve discussion. The reason is that in such cases the courts refuse to interfere until the Land Department has done its work and issued a final patent, thus ending the proprietary interest of the United States in the land and making the contest over it a matter of private interest only. Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Marquez v. Frisbie, 101 U. S. 473, 25 L. Ed. 800; Cosmos Exploration Co. v. Gray Eagle Oil Co., 190 U. S. 301, 23 S. Ct. 692, 47 L. Ed. 1064. Under the Leasing Act the land of the United States is not to be conveyed by patent, but leased, so that the proprietary interest of the United States in the land never ceases. Nevertheless, the lease is the final action of the Land Department in disposing of the land, and in this respect is analogous to a patent. The general powers of the Land Department in administering this law are just such as are exercised in administering other land laws, and exactly the same necessities exist for judicial review of frauds on or in the Department, or mistakes of law, or excesses of the limits of authority, as arose in reference to the grant of patents, and similar remedies ought to apply. Furthermore, since a mere permit to prospect for oil or gas under 30 USCA § 221, is exclusive, and in case of discovery carries the right to take the oil and gas found at a royalty of 20 per cent. until a lease is applied for, section 224, and to lease for twenty years 160 acres, or one-fourth of the land prospected, at a royalty of 5 per cent., with a preference right to lease the whole land at a royalty to be fixed under

Regulations, section 223, the permit may be of as much value and importance as the lease which it controls. The permit is itself an act of the Land Department, final so long as it lasts, and though in its inception a mere license conveying no estate in the land, it is a final grant of a valuable right pursuant to law which ought to be secured to the person to whom the law gives it. Judicial inquiry concerning this right cannot be delayed until the permit is executed by the permittee's making the required expenditures, and by his making discovery and obtaining a lease, for it would be most inequitable then to substitute another lessee for the permittee. A just remedy for a wrong award of the permit should be applied prior to the issuance of the permit or promptly thereafter. In deference to the authority of the Land Department, the courts have always refused to interfere until it has exercised its function, or has refused to do so. When that function is to issue a patent, no interference has been allowed until the patent issues. * * * We assume that it was for this reason that Hardeman's bill in the Supreme Court of the District of Columbia against the Secretary for an injunction was dismissed. That bill strongly presented the reasons why the remedy it proposed was to be preferred over that here sought, whose difficulties now under discussion were foreseen. That the permit is a perishing thing, unable to outlast a long litigation, is another reason for settling whose it shall be before it issues. But it being apparently established that injunction is unavailable, we think the remedy here sought when invoked without laches is to be allowed. It has been applied to leases and permits under the Leasing Act without question. Isaacs v. De Hon (C. C. A.) 11 F.(2d) 943. In Hodgson v. Federal Oil & Development Co. (C. C. A.) 5 F.(2d) 442, the question was raised that the United States were a necessary party, but it was not decided either by the Circuit Court of Appeals or by the Supreme Court on appeal to it, 274 U. S. 15, 47 S. Ct. 502, 71 L. Ed. 901, 54 A. L. R. 869, both courts dealing only with the merits. It is true that neither lease nor permit ends the interest of the United States in the land involved. If the court were undertaking to dispose of the land to the injury of the United States, they would be an indispensable party. Louisiana v. Garfield, Secretary, 211 U. S. 70, 29 S. Ct. 31, 53 L. Ed. 92; Goldberg v. Daniels, Secretary, 231 U. S. 218, 34 S. Ct. 84, 58 L. Ed. 191. And in so far as lease

and permit are contracts, neither could be canceled or reformed without all parties to them being before the court. * * * But looking at the substance of the matter, we think that the disposition of the land has already been made by the action of the Secretary in issuing a permit on the terms fixed by the law and the regulations. No other or different disposition is now proposed to be made, and no term of the contract is to be altered. A change of permittee is alone to be effected. This would be a most important matter in contracts, permits, or leases where the person to be dealt with could be freely chosen or rejected. But here the law makes the choice, and the question is whether the Secretary by mistaking the law has given the contract to some one other than the one chosen and intended by the United States, speaking through the Congress. The court but succeeds to the Secretary in identifying that choice. The only real interest of the United States lies in having their will as expressed in their laws carried out, and this is not a proprietary interest that will be adversely affected by the transfer proposed.

"It is again objected that the lease is expressly made unassignable without the consent of the Secretary, 30 USCA § 187, and the permit being a personal license is in its nature nontransferable, but is by Regulation 12½, 47 Land Decisions 437, made assignable to qualified persons, but only on first obtaining the consent of the Secretary. This restriction on transfer applies to voluntary transfers, and will hardly be deemed applicable in case of death, bankruptcy, or court decree. But the difficulty is met by the just assumption that the Secretary intends that leases and permits shall go to those whom the law entitles to them, and when a transfer is ordered to accomplish this his consent is to be implied, and may be compelled if refused. If such a transfer be decreed, he will no doubt, on request, enter his consent thereto, and make necessary substitution of bond, and do all else that is appropriate to perfect the transfer. We therefore affirm the judgment which retained the bill for trial."

In view of the decisions with reference to the inchoate rights of a locator under the placer mining laws before discovery, and the analogous but more definitely determined rights of a locator who has acquired a prospecting permit, we see no reason to doubt that, when the territorial Legislature of Alaska enacted its Mechanic's Lien Law of 1921, supra, in favor of those working in or about

oil wells, it intended to include in its definition of owner one who held such a permit from the Secretary of the Interior. We hold that he is an owner of an interest in the land within the meaning of the laws of Alaska under consideration, and that his interest therein is subject to a mechanic's lien, without prejudice to the rights of the government.

Decree sustained.

WEBSTER, District Judge, dissents.