**HOUCK et al. v. JOSE et al.**

No. 703.

District Court, S. D. California,
Central Division.

June 14, 1947.

Orris R. Hedges and Monta W. Shirley, both of Los Angeles, Cal., for plaintiffs. For the Defendants:

William W. Kaye, Reynolds & Painter, and Howard Painter, all of Los Angeles, Cal., for defendants Hammond and others.

Michael F. Shannon and Thomas A. Wood, both of Los Angeles, Cal., for defendant Jose and others.

YANKWICH, District Judge.

By their complaint, Stanley B. Houck and others seek to quiet title to sixteen placer mining claims containing deposits of montmorillonite, all located in Imperial County, California, and being in Township 14 South, Range 12 East, San Bernardino Base and Meridian.

■ At the trial I expressed doubt whether one who has no greater interest than a mining location could bring an action to quiet title. A further study of the problem has led me to the conclusion that the action is maintainable under the recognized principle that one who is in the process of acquiring a title to public lands has a property right which may be protected either by an action for ejectment or one to quiet title. See Gauthier v. Morrison, 1913, 232 U.S. 452, 34 S.Ct. 384, 58 L.Ed. 680; Fox Film Corporation v. Doyal, 1932, 286 U.S. 123, 129, 52 S.Ct. 546, 76 L.Ed. 1010; Martin v. Bartmus, 1922, 189 Cal. 87, 207 P. 550.

■ Each mining claim consists of 160 acres. Two groups of defendants, to be referred to as the Jose group, headed by J. A. Jose, and the Hammond group, headed by Harris H. Hammond, have answered denying the title of the plaintiffs. Each of the three groups claims title for itself. The plaintiffs, to be referred to as the Houck group, and the Hammond group rely on locations made on September 7, 1945, the first day on which placer claims could be located on the lands after they had been withdrawn from entry, first by the Secretary of the Interior as far back as 1920, and later by presidential decree which reserved them for use as a firing range during the war. The Jose group, originally asserting some rights under claims dating back to 1937, when the lands were not open to entry, now ground their claim upon locations made on January 17, 1946.

Considering the first two groups, Houck and Hammond together, I am of the view that the Houck claimants have shown, by a preponderance of the evidence, full compliance with Sections 2303 and 2304 of the Public Resources Code of California and with Sections 35 and 36 of Title 30 U.S. C.A. See United States v. Sherman, 8 Cir., 1923, 288 F. 497; Alaska Consolidated Oil Fields v. Rains, 9 Cir., 1932, 54 F.2d 868, 870, 871. The photographic evidence shows that the boundaries were clearly marked with posts which indicated the sections claimed, that notices of location of the placer claims were posted, placed in jars near the post where they could not be destroyed by the elements, that the posting of each notice was witnessed by at least two witnesses, each of whom noted *to the minute* the time of the posting. This was not only a compliance with the exact

wording of the statute, but was also what mining authorities consider good practice. Ricketts says that "the location notices should be posted at the discovery point and it is customary to protect it from the elements in a box, tin can or cairn in plain view." Manner of Locating and Holding Mineral Claims in California, 1946, by A. H. Ricketts, with revisions as of July, 1946, by C. H. Logan; and see Ricketts, American Mining Law, 4th Ed., 1943, Secs. 616, 695.

Each notice contained a statement of the markings of the boundaries by reference to surveyed sections. A duplicate copy of each was duly recorded within the ninety day period in the County Recorder's Office of Imperial County and re-recorded after the discovery work was performed.

There is adequate evidence of work performed in compliance with the statutes, substantiated by the payroll book and by testimony of credible witnesses, including the manager of the Bank at Brawley, who witnessed the act of paying the foreman and the Mexican laborers who performed the work.

While the Hammond group claims to have located the same claims on September 7th, it is quite evident that the usual procedure of posting the claims and recording them afterwards *was not* followed. The form they used is a Colorado form and the fact that the instruments were all recorded at the same time,—at 10 o'clock a. m., September 7, 1945, indicates that an *unsuccessful* attempt was made to comply with the law. Counsel for this group concede as much when they claim now that the only object in introducing the recorded claims was to show that notices of claims so worded were posted on stakes driven into the ground. A weatherbeaten copy of one notice has been brought into court. An examination of it under a powerful magnifying glass shows that it could not possibly have been signed by the claimants, for no traces of ink are discernible.

It is clear that the claimants did not make any effort to "protect the notice." See Ricketts, American Mining Law, 4th Ed., 1943, Sec. 695. The evidence as to the driving in of the stakes is equally unsatis-factory. We do not have as to these notices the details which we have as to the others. So that, assuming that this group performed the development work required, the Court, having to choose between two claimants who trace their claims to the same date, must, perforce, favor the group which shows more substantial compliance with the law and produces the strongest evidence of satisfying all the requirements as to locations. The fact that it was attempted later on to complete this location by recording a so-called "amended notice" of location which contained a delineation of the boundaries and a description of the work done cannot cure the insufficient proof of compliance by this group. For this amended notice was not "a true copy of the notice" as required by Section 2313 of the Resources Code, but an "amended notice" containing the additional matters just mentioned, which *were not on the posted notice*. See Brown v. Gurney, 1906, 201 U.S. 184, 191, 26 S.Ct. 509, 50 L.Ed. 717. While amended location notices are allowed (California Resources Code, Section 2310) they cannot, by the very wording of this section, interfere with "the existing rights of others at the time of posting and filing the amended location notice". And a recording before posting is also subject to intervening rights. Ricketts, American Mining Law, 4th Ed., 1943, Sec. 698.

The Jose group, which, as already stated, originally based its claim upon an attempted location in 1937, when the lands were not subject to entry, now claims rights under notices of location dated January 17, 1946. After that date, they entered upon the claims and did work of improvement. They also challenge the adequacy of the work done by the other groups on the basis of engineering measurements made long after the work was done.

I believe that satisfactory evidence of the type produced by the Houck group should not be disregarded on the basis of theoretical computations made later by interested parties,—especially when the evidence as to the work done is uncontradicted and the expenditure of money is evidenced by payroll books and by other credible testimony.

The only question which this group of claimants raised in my mind arose from their reference to United States ex rel. United States Borax Co. v. Ickes, 1938, 68 App.D.C. 399, 98 F.2d 271. They seemed to contend, as I understood them, at the trial, and as they assert in a letter written to me since the trial in answer to a comment by other counsel on the same case, that, under this decision, "there could be included no more than 20 acres for each individual locator", and that, consequently, the work had to be done on each 20 acres.

Further study of the case leads me to the conclusion that it does not apply to the situation before us. The court there was dealing with a group of persons who, after locating several placer claims, transferred them to one person who attempted to do the work. And the Court held that the limitation to persons who are not a part of an association applied. The gist of the decision is on pages 278–281 of 98 F.2d and need not be reproduced here.

Several things are quite evident from this ruling: (1) The Court holds that the requirement as to discovery on each of the 20-acre tracts applies only to "a non-association claimant, either individual or corporate". (2) As distinctly, the Court determines that an association of persons could still claim as separate locations acreage equivalent to 160 acres for each person in the association. (3) The case has no bearing on Sections like 2304 and 2305 of the California Resources Code. We particularize.

■ The acreage limitation merely means that a *single* mining location by an association cannot exceed 160 acres. But an association *is not limited to one location*. It may make distinct locations, not exceeding 160 acres, of contiguous lands. Smelting Co. v. Kemp, 1881, 104 U.S. 636, 26 L.Ed. 875; Tucker v. Masser, 1885, 113 U.S. 203, 5 S.Ct. 420, 28 L.Ed. 979; Peabody Gold Mining Co. v. Gold Hill Mining Co. 9 Cir., 1901, 111 F. 817, 820; Nome & Sinook Co. v. Snyder, 9 Cir. 1911, 187 F. 385, 388.

In Nome & Sinook Co. v. Snyder, supra, our Circuit Court of Appeals quotes with approval the following statement from the Supreme Court of Colorado in Kirk et al. v. Meldrum, 1901, 28 Colo. 453, 460, 65 P. 633, 636: "The construction of the act of Congress with respect to placers has universally been that the act makes provision for such locations, and prescribes the area which may be located; in other words, the area is limited to 20 acres to each locator, and that a number of individuals may locate a claim in common not exceeding 20 acres to each person, *and not exceeding 160 acres in any one claim*." [187 F.2d 388.] (Emphasis added.)

As said by the late District Judge Robert S. Bean of Oregon, while sitting in this district, in United States v. California Midway Oil Co., D.C.Cal., 1919, 259 F. 343, 351: "There is so far no law of Congress or regulation made in pursuance thereof limiting *the number of placer mining claims an individual or association of individuals may make. On the contrary, the policy of the government seems to be to encourage the development of its mineral resources and to offer every facility for that purpose.*" (Emphasis added.)

The same judge, in a prior case, also decided in our district, United States v. Brookshire Oil Co., D.C.Cal., 1917, 242 F. 718, 721, interprets the meaning of the acreage limitation in the manner stated in this opinion. "It is true that there is no limitation *as to the number of mining claims an individual or association of individuals may locate,* but it is provided that no claim shall exceed 20 acres for each individual (section 2331, R.S. [30 U.S.C.A. § 35], Comp.St.1916, § 4630) *or 160 acres for any association*. Section 2330, R.S. ([30 U.S.C.A. § 36], Comp.St.1916, § 4629) This is a direct and positive limitation of the amount of mining ground any one claimant may appropriate individually or as a member of an association *in any one claim,* and he cannot evade the law by the use of the names of his friends, relatives, or employees. Any device whereby one person is to acquire more than 20, or an association more than 160, acres in area, *by one discovery,* constitutes a fraud upon the government and is without legal support and void." (Emphasis added.)

Ricketts writes: "The mining law prescribes a limitation of the size of a loca-

tion, but there is *no limit* as to the number thereof that an individual, *association of persons,* or a corporation may locate or acquire except in Alaska, Oregon and formerly in Nevada. A mining claim may include *as many adjoining locations as the owner may acquire by location or otherwise,* and the ground covered by all will constitute a 'mining claim' and is so designated. The terms 'location' and 'mining claim', however, are often used indiscriminately to denote the same thing." (Emphasis added.)

■ The conclusion is, therefore, inevitable that the plaintiffs could legally locate several claims of 160 acres each as association claims, and, having done so, they. *were not* required to do work as to each claim on each 20 acre piece. The rule is firmly established in California and in the Ninth Circuit that work done on each 160 acre parcel of a group of claims is full compliance with the law. This for the reason "that the law does not require the annual work on each 20-acre lot of an association claim." Rooney v. Barnette, 9 Cir., 1912, 200 F. 700, 708; and see Union Oil Co. of California v. Smith, 1919, 249 U.S. 337, 350 et seq., 39 S.Ct. 308, 63 L.Ed. 635; Anvil Hydraulic & Drainage Co. v. Code, 9 Cir., 1910, 182 F. 205; Consolidated Mutual Oil Co. v. United States, 9 Cir., 1917, 245 F. 251; United States v. California Midway Oil Co., 9 Cir., 1922, 279 F. 516 (especially concurring opinion of Judge Ross); Reeder v. Mills, 1923, 62 Cal.App. 581, 217 P. 562; see also Alaska Consolidated Oil Fields v. Rains, 9 Cir., 1932, 54 F.2d 868, 890, 891.

This is also the general rule. Ricketts, American Mining Law, 4th Ed., 1943, Sec. 488.

Little need be added on the contention stressed in counsel's letter that the Jose claimants are the only ones who have proved full compliance with the requirements of Sections 2304 and 2305 of the California Resources Code. I have already indicated why I believe that the plaintiffs have shown substantial compliance with these sections.

■ One observation, however, should .be made. When we are dealing with an adversary proceeding between the United States and a claimant, a different rule applies than when we are passing on the rights of conflicting claimants. No presumptions are indulged in favor of a claimant, even in possession, against the United States. But as between a locator in possession and a subsequent intruding locator, the law favors the locator who, in good faith, occupies mineral lands and does improvement work on them against the intruder who goes on the land which he knows has been located, claimed and occupied by another and. tries to oust him by doing discovery work of his own. See Union Oil Co. of California v. Smith, 1919, 249 U.S. 337, 346, 39 S.Ct. 308, 63 L.Ed. 635; Rooney v. Barnette, 9 Cir., 1912, 200 F. 700; Cole v. Ralph, 1920, 252 U.S. 286, 287, 40 S.Ct. 321, 64 L.Ed. 567; United States ex rel. United States Borax Co. v. Ickes, 1938, 68 App.D.C. 399, 98 F.2d 271, 274; Ricketts, op. cit. Sections 731, 732, 734, 1101, 1102, 112. And see my opinion in United States v. Mobley, D.C.Cal., 1942, 45 F.Supp. 407, 408–410.

■ Judgment will, therefore, be for the plaintiffs quieting their title to the claims in suit and that the defendants and cross-complainants take nothing by the cross-claims.